[No. D042899. Fourth Dist., Div. One. May 13, 2004.]

In re the Marriage of ALAN C. and PERRI L. WITTGROVE.
ALAN C. WITTGROVE, Appellant, v.
PERRI L. WITTGROVE, Respondent.

**COUNSEL**

Sharron Voorhees for Appellant.

Law Offices of Bernard Wolf, Bernard Wolf; Seltzer, Caplan, McMahon & Vitek, Gerald L. McMahon and Amanda L. Kramer for Respondent.

**OPINION**

**HUFFMAN, Acting P. J.**—Alan C. Wittgrove appeals from an order made March 25, 2003, and entered August 25, 2003, requiring him to pay to Perri L. Wittgrove[2] temporary child support of $13,488 per month for the parties' two minor children and $30,000 per month in temporary spousal support. We affirm.

### FACTUAL BACKGROUND

Alan, a general and bariatric surgeon, and Perri, an obstetrician-gynecologist, separated in December 2001. During their over 15-year[3] marriage they had two children, a son and daughter, respectively aged 9 and 11 at the time Alan filed for dissolution of marriage on August 16, 2002. After Perri filed her response, she filed an order to show cause (OSC) on October 31, 2002, requesting primary custody of the couple's two minor children, temporary child and spousal support, and other relief concerning the marital property.

In support of the OSC, Perri filed a declaration explaining that the parties had been doctors in the Navy at the time they were married, with Alan going

---

[2] For purposes of clarity and not out of disrepect, we refer to the parties by their first names.

[3] According to Alan's petition for dissolution, the parties had been married 15 years and three months at the time of their separation in December 2001. Perri's response lists the length of marriage as 16 years, three months.

into private practice in 1986, and she in 1987. Perri had been the primary caregiver of their children and primarily responsible for running the household while Alan built up his practice. She had taken time off from her practice when each child was born, had cut back her schedule and had taken on a partner in 2001 in response to Alan's complaints that she was working too much.

With regard to child custody, visitation, and support, Perri stated that since the separation she was the parent who cared for the children's day-to-day needs and Alan saw the children at most two weekends per month from Friday evening to Sunday evening. Perri requested guideline child support and that unreimbursed medical and dental expenses for the children be shared with Alan on a pro rata basis.

With regard to temporary spousal support, Perri requested sufficient support to meet the household expenses for her and the children, "consistent with the lifestyle we enjoyed during the marriage." She noted that Alan's income in 2001 was $2,120,322 as compared to her income of $127,845. She also stated that "[d]uring the marriage, we enjoyed a comfortable lifestyle, which included a 4,000 square-foot home with tennis court and pool, a live-in housekeeper, a nanny, a gardener, and vacations to places such as Hawaii, Cancun, Telluride, Cabo San Lucas, Israel, and Europe. We shopped wherever and whenever we wanted. For example, for my clothing alone, we spent approximately $15,000 per year, and our lifestyle included making donations of $40,000 to $50,000 per year to various charities. In 2001, we donated over $65,000. We were also able to invest approximately $200,000 to $300,000 per year for savings."

Perri further noted that since their separation in December 2001, Alan had been depositing between $15,000 to $20,000 per month into their household account and had continued to pay their credit card bills, which were between $10,000 and $15,000 per month. Because Alan had stopped paying the credit card bills for her and the children the month before, Perri declared she had been unable to meet the household expenses or invest money for savings as she did during the marriage solely on Alan's $15,000 per month contribution and her gross monthly salary of $11,000. Perri further noted she was now carrying a substantial balance owing on her credit card for the first time in years.

Perri's income and expense declaration submitted with the OSC showed household expenses for her and the children were $38,388 per month and her current net monthly disposable income was $7,271. The child support information filed with the OSC alleged the children spent 85 percent of the time with Perri and 15 percent of the time with Alan. Perri also lodged copies of the parties' federal and state income tax returns for 2000 and 2001.

In his lengthy responsive declaration, Alan stated he had no issue in providing support to Perri to maintain their children at the standard of living which they had provided them since birth, but did contest the spousal support she sought because he felt she had purposely reduced her income to set the stage for a support award upon separation and was understating what her true income from her medical practice could be. Although he conceded his gross income in 2001 was $2,120,322 and $1,032,852 in 2002, Alan requested the court impute $250,000 to Perri for the income she could easily earn if she applied her skills and time to her practice, and objected to her statement of expenses to run the household, claiming they were also twice the amount used to run the household during their marriage. Alan also requested the court consider the "actual needs" of the children when it determined the amount of temporary child support because of his "extraordinarily high income."

Regarding a parenting plan, Alan refuted that Perri was the sole caregiver of the children, claiming he was the parent who interacted the most with the children during the marriage. Since the separation, he had experienced difficulty in communicating with the children because he had to go through Perri regarding any visitation. It was Alan's hope that he could equally co-parent with Perri "on a week-on week-off basis." He had purchased a 4,000 square foot home five miles from the marital residence and within the children's school district. He had help to care for the children when he was away at the office and could easily be home by 4:30 or 5:00 p.m. each day. Alan did not want to be reduced to only an "alternate weekend" father.

In her reply declaration, Perri denied Alan's numerous personal attacks, countering with many of her own disparaging remarks. Essentially, Perri represented that while the Family Court Services (FCS) mediator had recommended Alan have only 22 percent parenting time, she looked forward to him having increased child-sharing time in the future. Perri also justified her reduction in work hours and explained more fully her household expenses.

On March 21, 2003, Alan filed an income and expense declaration showing $78,438 net monthly disposable income and $20,137 a month in expenses. He also filed a memo showing $1,731,974 as his estimated net income for 2002 from his former medical partnership and his current medical corporation. In addition, Alan filed a five-year income analysis he had done for Perri, showing that she could have made $22,189 per month in 2002 with a gross income of $266,263.

Before the March 25, 2003 hearing on the OSC, Perri filed another income and expense declaration that date, showing total monthly expenses remained at $38,388 while her current monthly disposable income had dropped to $5,974 because her "income from [her] practice varies from month to month."

At the hearing, after the parties noted for the record they were stipulating to the appointment of appraisers for the marital residence and the parties' medical practices, Perri's counsel requested the court confirm the FCS report regarding child-share time and strike certain statements disparaging of Perri made in Alan's declaration. Counsel also objected to the five-year income analysis submitted by Alan as having no foundation and being inaccurate. Counsel then argued that because Alan's salary had been nearly 10 times that of Perri's, Alan earning approximately $2 million per year while Perri earned only about $150,000 to $200,000 per year, and given the parties' lifestyle during the marriage, $40,000 per month total for household expenses plus money for savings, which was not included in those expenses, would be reasonable. Counsel stressed that Perri was also now having to pay many of the credit card debts that Alan had paid for in the past. Perri was requesting guideline child support and sufficient spousal support to meet the household expenses consistent with the marital lifestyle, which included the ability to save $16,000 to $25,000 per month.

Alan's counsel then clarified that Alan's income for 2002 was approximately $1.7 million, asked the court to strike certain paragraphs of Perri's declaration that were disparaging to Alan, and argued strenuously for more child-sharing time for Alan and more mediation time for the parties regarding child custody issues.[4] As for support, Alan's counsel challenged the appropriateness of certain items claimed by Perri as expenses, i.e., her credit card payments, home improvements, and certain expenses that Perri was deducting from her business, like the lease of one of her automobiles and accounting services. Counsel asserted that because Perri's budget was thus at most about $23,300 per month without such improper expenses, the deduction of her $7,271 net monthly disposable income figure from her first income and expense statement would render expenses of only $16,294 monthly which she could afford to pay.

With regard to child support, Alan's counsel argued the guideline amount was rebuttable due to Alan's extraordinarily high income which would lead to an amount that far exceeds the needs of the children. Counsel referred the court to Perri's listing of the children's expenses, which came out to about $4,000 a month. When counsel started pointing out that certain expenses listed for the children were no longer expenses, the court sustained Perri's objection to this as evidence for lack of foundation and without support in any of the declarations or pleadings. Counsel then used Perri's income and expense statement and the tax returns she had filed to argue the court should impute an income of $266,000 a year to her.

---

[4] The court struck those portions in both Alan's and Perri's declarations referring to so-called psychiatric analyses of the other party.

After several other objections that Alan's counsel was misstating the evidence, the court lost patience with the parties having set this matter for a short cause and reminded them that "[t]he intention for temporary support is to maintain the status quo." When Alan's counsel continued to point out that it was important for the court to look at the children's needs, at what Perri's expenses were without savings and capital improvements to the family residence, the court asked the parties to give it "your bottom line request."

Alan's counsel asked the court to award Perri $6,500 a month for the two minor children and $10,000 a month for spousal support, arguing Perri was able to support the children herself. Perri's counsel represented that to be on the conservative side, running a support calculation based on $200,000 income for Perri and Alan's income of $1.7 million, spousal support would be $34,264 and the presumed child support would be $14,356 for a total of $48,620 in support.

Although Perri's counsel acknowledged there is a "high-income-earner exception to the application of child support guidelines," counsel argued Alan had failed to meet his burden of showing that the formula amount is unjust and inappropriate. Counsel also argued that a change from the current timeshare for the children to a 50/50 timeshare as proposed by Alan would be too dramatic a change for the interest of the children's stability and continuity of routine. As to the reasonableness of Perri's stated expenses, counsel asked the court to look at the $25,000 to $35,000 Alan had been providing Perri up to the last month, which only allowed her to make ends meet, but did not permit her to save as she had during the marriage. Counsel represented that Perri has had to cut back and has been unable to meet her reasonable needs which were the standards established during the couple's marriage. Counsel also asked for a contribution for attorney fees and costs. Alan's counsel did not oppose an order that the attorney fees for both parties be paid out of the sufficient community assets in this case.

The court ruled it would adopt the FCS recommendation regarding child custody except for the amount of share time, which it was changing to give Alan 34 percent share time by its calculation. The court then stated "[I]t will be father [(Alan)] with single, with one, 34 percent time share, wages of [$] 142,000 per month, itemized deductions of, with property tax expense of $700, deductible interest of [$] 4677. Mother [(Perri)] with head of household of three, wages of [$] 16,700 per month. That's using a [$] 200,000 a year number . . . because it was represented to the Court that it was really a waste

of [its] time to spend time on the question of whether that should have been lower or higher—health insurance of $61 per month, it's a guideline child support of [$] 13,488 per month."

In making this temporary child support ruling, the court specifically found that the guideline presumption under the Family Code had not been rebutted. When Alan's counsel challenged this finding, the court explained that just "saying" one had a high income was not enough to rebut the presumption under Family Code section 4057. The court further clarified that it did not have "sufficient evidence to make the determination that the amount determined under the formula [guidelines] would exceed the needs of the children."

With regard to spousal support, the family law judge then stated, "We don't use a guideline spousal support in this state, at least in this court house, at least I don't. If we did use a Santa Clara [one], we would in fact be at [$] 34,930 per month. The temporary spousal support order in this case [is] going to be $30,000 per month. And I am looking at that as maintaining the status quo. I'm not putting a lot of stock at this time in the . . . claimed expenses. I agree that some of them seem to not appropriately be considered for purposes of temporary orders, but may come into play later when we deal with other aspects of the case."

The court then accepted the parties' earlier stipulation regarding residence and medical practices' appraisals as part of the court's order and also ordered each party's counsel be paid $20,000 in attorney fees from the community assets. The effective date of support was set as January 1, 2003. The written findings and order after hearing was filed on August 25, 2003.

## DISCUSSION

On appeal, Alan challenges only those portions of the court's order concerning temporary child and spousal support. He specifically contends the temporary child support order was based on incorrect information because the trial court failed to exercise its discretion in determining Perri's correct level of income that could be attributed to her, that the total order exceeded the family's needs and the status quo, that the court also failed to discount expenses not properly considered at this time, and that the court improperly based its order on the Santa Clara temporary spousal support guidelines, slightly adjusted. We find no abuse of discretion in the trial court's temporary support order.

██ Pending a marriage dissolution or legal separation action where there is an issue of support of a minor child, the court may order either or both parents to pay "any amount necessary for the support of the child" (Fam. Code,[5] §§ 3600, 4001), and may order either spouse to pay "any amount that is necessary" for the other spouse's support, consistent with the requirements of sections 4320, subdivisions (i) and (m), and 4325.[6] (§ 3600.)

With regard to child support, notwithstanding the language of section 3600 regarding "any amount necessary," courts are required "to adhere to the statewide uniform guideline and may depart from the guideline only in the special circumstances set forth in this article." (§ 4052.) As pertinent here, the statutory formula for computing child support in section 4055 yields a presumptively correct amount of support per child which may only be rebutted "by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case . . . because . . . the following factor[] is found to be applicable by a preponderance of the evidence . . . [¶] . . . [¶] (3) The parent being ordered to pay child support has an extraordinarily high income and the amount determined under the formula would exceed the needs of the children." (§ 4057, subd. (b)(3).) The parent who invokes this high income exception to the guidelines has the burden of proving " 'application of the formula would be unjust or inappropriate,' and the lower award would be consistent with the child's best interests. [Citations.]" (*In re Marriage of Hubner* (2001) 94 Cal.App.4th 175, 183 [114 Cal.Rptr.2d 646] (*Hubner*).)

██ Although section 4053 grants a court broad discretion in applying the principles in implementing the statewide uniform guidelines for child support, the main concern is the child's best interests. (§ 4053; see *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 283 [111 Cal.Rptr.2d 755] (*Cheriton*).) As relevant to this case, section 4053, subdivision (a) provides that it is a parent's principal obligation "to support his or her minor children according to the parent's circumstances and station in life," and subdivision (f) provides that the "[c]hildren should share in the standard of living of both parents. Child support may therefore appropriately improve the standard of living of the custodial household to improve the lives of the children." (See also *Cheriton, supra*, 92 Cal.App.4th at p. 292.)

---

[5] All future statutory references are to the Family Code unless otherwise specified.

[6] Sections 4320, subdivisions (i) and (m), and 4325 concern limitations in the trial court's discretion to award temporary spousal support in domestic violence situations not applicable here.

■ We review child support awards under an abuse of discretion standard. (*In re Marriage of Chandler* (1997) 60 Cal.App.4th 124, 128 [70 Cal.Rptr.2d 109] (*Chandler*).) "We cannot substitute our judgment for that of the trial court, but only determine if any judge reasonably could have made such an order. [Citation.] Our review of factual findings is limited to a determination of whether there is any substantial evidence to support the trial court's conclusions. [Citation.]" (*Ibid.*)

■ We also review temporary spousal support orders under the abuse of discretion standard. (*In re Marriage of Winter* (1992) 7 Cal.App.4th 1926, 1932 [10 Cal.Rptr.2d 225] (*Winter*).) ■ Generally, temporary spousal support may be ordered in "any amount" based on the party's need and the other party's ability to pay. (*Ibid.*; see also *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 159 [18 Cal.Rptr.2d 743] (*Dick*).) "Whereas permanent spousal support 'provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property,' temporary spousal support 'is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations.' [Citations.]" (*Winter, supra,* 7 Cal.App.4th at p. 1932.) The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount. (*Cheriton, supra,* 92 Cal.App.4th at p. 312.)

■ Rather, in exercising its broad discretion, the court may properly consider the "big picture" concerning the parties' assets and income available for support in light of the marriage standard of living. (See *Dick, supra,* 15 Cal.App.4th at p. 165.) Subject only to the general "need" and "the ability to pay," the amount of a temporary spousal support award lies within the court's sound discretion, which will only be reversed on appeal on a showing of clear abuse of discretion. (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594 [124 Cal.Rptr.2d 342].) "Ability to pay encompasses far more than the income of the spouse from whom temporary support is sought; investments and other assets may be used for . . . temporary spousal support . . . . [Citations.]" (*Dick, supra,* 15 Cal.App.4th at p. 159.) Trial courts may properly look to the parties' accustomed marital lifestyle as the main basis for a temporary support order. (§ 3600; *Winter, supra,* 7 Cal.App.4th at p. 1932.)

■ Moreover, even if a court does not have its own local rules or guidelines that provide "standardized temporary spousal support schedules" that mark appropriate awards for spousal support based solely on the parties' incomes with adjustments for any child support, the use of such guidelines has been held to be a valuable tool in an aid to calculating

Motemporary support. (*Winter, supra,* 7 Cal.App.4th at p. 1933.) Further, even where standardized local schedules have exceeded a party's stated living expenses because he or she has cut back or is living frugally, courts have held the use of such guidelines for temporary spousal support proper to maintain the marital lifestyle.[7] (*Ibid.*)

■ Applying the above principles to this case, we conclude the trial court's temporary child and spousal support orders were not an abuse of discretion. With regard to the child support order, the court's finding that Alan had not met his burden of rebutting the presumptively correct guideline amount is fully supported by the lack of evidence in the record to show " 'application of the formula would be unjust or inappropriate,' and the lower award would be consistent with the child's best interests. [Citations.]" (*Hubner, supra,* 94 Cal.App.4th at p. 183.) In the absence of such evidence, we cannot say no judge would have reasonably made the same order under the same circumstances. (*Chandler, supra,* 60 Cal.App.4th at p. 128.) That being so, the court's use of the guideline was proper and no abuse of discretion is shown.

■ Nor can we find the court abused its broad discretion in setting the amount of temporary spousal support. Contrary to Alan's assertion, the record does not show the court improperly used the Santa Clara temporary spousal support guidelines, slightly adjusted. The court merely stated what the amount would be if those guidelines were used, but noted that neither it nor the courts in San Diego County generally used guidelines. The court clearly stated it was basing its support order on maintaining the status quo, which is the benchmark for temporary spousal support. (See *Winter, supra,* 7 Cal.App.4th at p. 1932.) However, even if the court had used the Santa Clara temporary support guidelines as a tool in setting the amount of temporary spousal support in this case, as noted above, that use would have been proper (*id.* at p. 1933), and would not have violated San Diego Superior Court Local Rules.[8]

---

[7] Alan's arguments at the time of oral argument based upon *In re Marriage of Zywiciel* (2000) 83 Cal.App.4th 1078 [100 Cal.Rptr.2d 242] (*Zywiciel*) are inapposite. *Zywiciel* concerned the sufficiency of the evidence to support an award of permanent spousal support which requires the trial court to consider all the circumstances listed in section 4320. (83 Cal.App.4th at pp. 1081–1083.) The award in *Zywiciel* was reversed because the court had merely relied on a computer-generated figure used as a guideline for setting temporary spousal support. (*Id.* at p. 1079.) Here, temporary and not permanent spousal support is at issue and, as noted above, the use of guidelines for setting such temporary support has been held to be proper. (*Winter, supra,* 7 Cal.App.4th at p. 1933.)

[8] San Diego Superior Court Local Rules, division V, Family Law, rule 5.65 specifically provides that: "[t]he court will consider all relevant factors in setting temporary spousal support, including guideline calculations based upon any formula in other counties of this state."

Moreover, Alan's assertions that the child support guideline amount is wrong and the temporary spousal amount is incorrect because the court failed to properly impute additional income to Perri fails because he did not present any competent evidence that Perri had both an ability and an opportunity to earn the attributed income he sought to impute to her. (*In re Marriage of Regnery* (1989) 214 Cal.App.3d 1367, 1372–1373 [263 Cal.Rptr. 243].) In addition, Alan's argument that there is no evidence to support the court's use of $200,000 as Perri's income is refuted by the record. Perri's counsel specifically offered that amount to use conservatively as her income, which fluctuated monthly, rather than continue to argue with Alan's counsel in the absence of his producing evidence that more income should be attributed to Perri. Essentially the admission of such amount as her income to be used in the child support guidelines when her income and expense statement stated her income for the past 12 months had been only $76,314 and Alan's own "five-year income analysis" stated Perri's income for 2002 was only $134,263, inured to Alan's benefit and does not show an abuse of discretion. Nor has Alan shown on this record any prejudicial error in the use of the $200,000 figure for calculating an amount of temporary spousal support.

In addition, Alan's specific claims the total order of temporary child and spousal support was improper because it exceeded the family's needs and the status quo, and the court failed to properly discount the expenses at this time are without merit. Alan ignores the evidence in the record concerning the parties' elaborate upper class lifestyle, which included substantial amounts of money to invest and save each year, and the fact that a court is not limited by a supported spouse's living expense needs when the parties' marital standard of living included savings and investments. (See *Cheriton, supra*, 92 Cal.App.4th at p. 312; *Winter, supra*, 7 Cal.App.4th at p. 1932.) Furthermore, "[w]hat constitutes reasonable needs for a child varies with the circumstances of the parties [and] the duty to support a child covers more than the mere necessities of life if the parent can afford to pay more. [Citations.]" (*Chandler, supra*, 60 Cal.App.4th at p. 129.) As already noted above, when minor children are involved, they should share in the standard of living of both parents and the amount of support may appropriately "improve the standard of living of the custodial household to improve the lives of the children." (§ 4053, subds. (a) & (f); see also *Cheriton, supra*, 92 Cal.App.4th at p. 292.) The court utilized these rules in this case and the amounts of temporary support awarded were well within its wide discretion. No abuse of that discretion has been shown.

## DISPOSITION

The order is affirmed. Perri shall recover her costs on appeal.

Haller, J., and McDonald, J., concurred.