Filed 5/12/14  Marriage of Grimm CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re Marriage of DAVID and ANNA GRIMM. | B247643 |
| | (Los Angeles County Super. Ct. No. PD054247) |
| DAVID GRIMM, Appellant, v. ANNA GRIMM, Respondent. | |

Appeal from orders of the Superior Court of Los Angeles County, Michael Terrell, Judge.  Affirmed.

David Grimm, in pro. per., for Appellant.

Anna Grimm, in pro. per., for Respondent.

_____

David Grimm, appearing in propria persona, appeals from family court orders awarding his former wife, Anna Grimm, temporary spousal support and need-based attorney fees and costs. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Initial Temporary Spousal Support Order and Award of Attorney Fees*

David and Anna were married on May 1, 2004.[1] Although they separated on December 21, 2010, they continued to live together with Anna's disabled mother in a condominium David had purchased prior to the marriage. A year and one-half later, on June 5, 2012, David petitioned for dissolution of the marriage in propria persona. On July 27, 2012 he served Anna with a 60-day notice to vacate the premises.

On August 1, 2012 Anna filed a request for temporary spousal support of $2,980 per month and payment of a portion of attorney fees. In her supporting declaration Anna asserted David, an engineer employed by a hospital since 2002, earned $8,018 per month in wages and investment income (taxable interest and ordinary dividends).[2] She testified she was unemployed with no source of income, savings or property. During the prior two years she had received a master's degree in teaching English as a second language, but was unable to find a job. She had been receiving unemployment benefits following her termination as a customer service representative in August 2010, but the benefits were exhausted in March 2012. From March 2012 through May 2012 she worked part time as a door-to-door salesperson earning at most $400 to $500 per month. In support of her request for attorney fees and costs, Anna's counsel filed a declaration stating Anna had paid $4,550 in fees through July 31, 2012 and $12,000 should be sufficient for fees through resolution of the action. A hearing was set for October 3, 2012.

---

[1] As is customary in family law proceedings, we refer to the parties by their first names for clarity and convenience. (See *In re Marriage of Left* (2012) 208 Cal.App.4th 1137, 1139, fn. 1.)

[2] Anna included a joint tax return for 2011 with her declaration.

At the outset of the October 3, 2012 hearing Anna's counsel reiterated Anna was unemployed, and Anna herself told the court she was applying for jobs daily. In response David contended he had photographs of Anna's laptop computer demonstrating she had been employed since March 2012 by an insurance company. Rather than review the photographs and other documents David offered during the hearing, the court made a temporary spousal support order "without prejudice" of $3,229 per month effective September 1, 2012. The court increased the amount from the $2,980 Anna had requested based on her assertion David's monthly income was greater than reflected on the 2011 tax return. The court said it would revisit the issue on November 29, 2012, giving David the opportunity to file a responsive declaration, which he had not yet done, including documents challenging Anna's claim she was unemployed. Finding there was a clear financial disparity between Anna and David, the court also ordered David to contribute $5,000 to Anna's attorney fees, emphasizing it was an "interim order" until the court could "get a full picture."

2. *The Order Retroactively Reducing Temporary Spousal Support*

On October 24, 2012 David, represented by counsel, filed a responsive declaration, including documents indicating Anna had begun working as an assistant at Pendo Insurance in March 2012, earning $2,918 per month. David requested the court deny Anna's request for spousal support or, alternatively, impute earnings to her in that amount or at least minimum wage. David also requested the court reduce spousal support by the fair rental value of his residence ($1,700 per month), order Anna to move out of the home, order her to undergo a vocational evaluation and deny her request for attorney fees because she had made fraudulent representations regarding her employment status.

On November 5, 2012 Anna filed an amended income and expense declaration, stating she had begun working as an assistant at Pendo Insurance in March 2012 earning a commission. She explained, "I have been paid a total of $19,912.00 in commissions to date in 2012. When I need money, I request a pay advance. The money is then taken from the next commission(s) I earn until paid off. I currently owe my boss $5,025. I have earned a total of $14,887 for the year 2012, the remainder is a pay advance."

3

At the November 29, 2012 hearing Anna argued the spousal support order should not be modified because she would not know until the end of the year whether she would be required to reimburse her employer for the advances. Anna also argued David had not paid the full amount of the prior temporary spousal support order or any of the attorney fee award. The court explained ordinarily support orders are not effective until the parties live in separate residences and observed it may have overlooked (or was not aware of) the fact Anna and David were still living together. Anna responded she was trying to find a separate residence but did not have enough money for a security deposit. Anna's counsel suggested, "[I]f we can have a[n] in lieu of support order, have [David] agree to pay for the security deposit and maybe the first month's rent as, then, . . . she's willing to [move] as soon as she . . . finds a place." Anna also argued it was difficult to find a job, even one paying minimum wage, because she was responsible for caring for her mother. David argued Anna lacked credibility as to her employability because she had misrepresented her employment status at the first hearing,[3] he could not afford spousal support as demonstrated in part by the fact he had defaulted on his mortgage, he should be not responsible for subsidizing Anna's care of her mother, and the court had indicated spousal support should not commence until the parties lived in separate residences.

After hearing further argument, the court ordered temporary spousal support of $2,417, retroactive to September 1, 2012, based on a DissoMaster calculation submitted by David imputing minimum wage to Anna. Because of its concern about awarding support while the parties were still living together, the court ordered Anna to vacate David's home by January 15, 2013. With respect to the attorney fee award, the court ordered the $5,000 contribution would remain the same, but it was to be split between the firm that represented Anna at the initial hearing and the new firm representing her at the current hearing. The court also ordered Anna to submit to a vocational examination to be

---

3     Anna's counsel erroneously responded that Anna had disclosed in the July 30, 2012 income and expense declaration she was working at Pendo Insurance, but thought she was being truthful in stating she had no earnings because she had received reimbursable advances.

4

paid by David.  A status conference regarding the vocational examination was set for February 8, 2013 and trial for June 18 and 19, 2013.

   3. *The Motion for Reconsideration*

   In December 2012 David, once again representing himself, moved for reconsideration of the November 29, 2012 order.  David requested spousal support be reduced to "take into consideration the effect income taxes, community debt, attorney fees, & the tax implications of my house being in foreclosure with legal actions taken solely against me on this asset."  David also argued the DissoMaster calculation had "several limitations" that did not take his circumstances into account.  Anna opposed the motion on the ground David had failed to identify any new facts warranting reconsideration.  Anna also argued David's claims of financial hardship were not credible because he had traveled to the Philippines several times in recent months.  A hearing was set for February 14, 2013.

   In a February 6, 2013 vocational assessment report, rehabilitation consultant Howard Goldfarb opined the likelihood that Anna could secure employment in one of five categories (for example, administrative assistant or customer service representative) earning $36,046 annually was "quite good":  "Ms. Grimm presents herself well, has significant college experience and has had past work experience."

   David and Anna represented themselves at the February 14, 2013 hearing.  David argued his financial circumstances had deteriorated since the last hearing because, for example, his house was in foreclosure, his wages were being garnished to pay the attorney fee award and he had not realized spousal support would not be tax deductible.  The court denied the motion for reconsideration, finding David could have presented the arguments at the previous hearing and there was no new evidence unavailable at that time.  Separately, the court granted David's motion for bifurcation and directed him to prepare a status-only judgment.  The remaining issues in the dissolution proceedings remained scheduled for trial on June 18, 2013.  David then argued spousal support should be reduced based on the recently completed vocational report.  The court ordered Anna and David to return that afternoon, giving it an opportunity to review the report.

At the afternoon hearing Anna asserted she had been unsuccessful in her efforts to obtain interviews with companies listed in the report as having openings in the fields identified by Goldfarb. She described the steps she had taken to find employment and difficulty obtaining a job teaching English or as a translator because of her heavy Russian accent and argued several statements in the report were incorrect or taken out of context. David argued Anna, who had told Goldfarb "working in an office was boring" and what "she would really like to do is sleep," was simply not interested in finding a job and preferred spending time with her friends. The court found a fair assessment of Anna's annual earning capacity was $30,000. Using that number, the court obtained a new DissoMaster calculation of $1,602 per month and ordered temporary spousal support reduced commencing April 15, 2013.

At trial, which began on June 18, 2013, the court ordered David pay $1,000 monthly spousal support from July 1, 2013 through December 31, 2013. Spousal support was set at zero on January 1, 2014 with the court terminating jurisdiction over the issue as of that date.

## CONTENTIONS

David contends the trial court committed several errors in setting temporary spousal support and awarding attorney fees on November 29, 2012 and abused its discretion in denying his motion for reconsideration of that order.

## DISCUSSION

1. *The Trial Court Did Not Abuse Its Discretion in Setting the Amount of Temporary Spousal Support*

Family Code, section 3600[4] authorizes the trial court to order temporary spousal support while a proceeding for the dissolution of marriage is pending. "Generally, temporary spousal support may be ordered in 'any amount' based on the party's need and the other party's ability to pay. [Citations.] 'Whereas permanent spousal support "provide[s] financial assistance . . . ," temporary spousal support "is utilized to maintain

---

[4] Statutory references are to the Family Code unless otherwise indicated.

the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." [Citations.]' [Citation.] The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount." (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove* ).)

A temporary spousal support order is directly appealable. (*In re Marriage of Gruen* (2011) 191 Cal.App.4th 627, 637.) We review an order for temporary spousal support for abuse of discretion. (*Wittgrove*, *supra*, 120 Cal.App.4th at p. 1327.) "[I]n exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living. [Citation.] Subject only to the general 'need' and 'the ability to pay,' the amount of a temporary spousal support award lies within the court's sound discretion, which will only be reversed on appeal on a showing of clear abuse of discretion. [Citation.] . . . Trial courts may properly look to the parties' accustomed marital lifestyle as the main basis for a temporary support order." (*Ibid.*)

David contends the court should have awarded Anna temporary spousal support of $13,350 for the 10 month period from September 2012 through June 2013 ($1,335 per month) instead of $22,125 ($2,417 per month for September 2012 through March 2013, $2,002 for April 2013 and $1,602 per month for May and June 2013). David derived this number by adjusting the DissoMaster calculation from the February 14, 2013 hearing to reflect Anna's salary potential as opined by Goldfarb ($36,000)[5] instead of $30,000 as found by the court to be a fair assessment of her earning potential.

The trial court did not abuse its broad discretion in setting the amount of temporary spousal support. Contrary to David's argument, the court was not required to take into consideration any specific factors, such as marketable skills Anna might have or

[5]     Goldfarb had opined Anna's earning potential was $36,046.

7

the tax consequences of a support order,[6] as it must in setting permanent spousal support. (See § 4320; *Wittgrove, supra,* 120 Cal.App.4th at p. 1327; *In re Marriage of Freitas* (2012) 209 Cal.App.4th 1059, 1071 ["[i]n contrast to an award of permanent spousal support under sections 4330 and 4320, an award of temporary support does not require consideration of numerous statutory factors"].) To the extent the court chose to impute income to Anna based on the vocational expert's opinion and reduce spousal support beginning April 15, 2013, it was well within its broad discretion to reduce her annual earning potential by 17 percent after considering the steps she had taken to find employment and her argument the vocational expert's opinion was not reasonable and contained inaccuracies. (See *People ex rel. Brown v. Tri-Union Seafoods, LLC* (2009) 171 Cal.App.4th 1549, 1568 ["the trial court is free to reject testimony of a party's expert, so long as the trier of fact does not do so arbitrarily"]; *In re Brian J.* (2007) 150 Cal.App.4th 97, 115 [trier of fact is "not bound by any expert's opinion" but "should give each expert opinion the weight [the trier of fact] feel[s] it deserves"]; *In re Marriage of Berland* (1989) 215 Cal.App.3d 1257, 1263 [court did not abuse discretion in finding wife had not diligently pursued gainful employment notwithstanding vocational evaluation "touting her 'consistently motivated, well thought out and well executed job search effort'"].) Because the credibility of experts and the weight to be accorded their conclusions are matters for the trier of fact, we do not reweigh or reinterpret that evidence. (See *People v. Poulsom* (2013) 213 Cal.App.4th 501, 518; *California Pines Property Owners Assn. v. Pedotti* (2012) 206 Cal.App.4th 384, 389, fn. 2; *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 204 ["'resolution of conflicts in the evidence, assessment of the credibility of the witnesses and the weight to be given the opinions of the experts were all matters within the exclusive province of the trier of fact'"].)

David argues the court admitted it erred in awarding temporary spousal support while David and Anna were still living together and compounded the error by ordering

---

6    Section 4059, subdivision (a), cited by David to support his argument tax effects must be considered in determining temporary spousal support, is applicable to the calculation of child support, not spousal support.

further temporary spousal support even though Anna had not yet vacated the home.[7] However, Anna's counsel argued Anna could not vacate the home because she did not have the money to pay three months rent in advance (first month, last month and security deposit), and needed the temporary spousal support to allow her to save the money to move. It was reasonable for the court to credit that explanation and address its concern about Anna "hav[ing] it both ways[,] . . . getting support and living under [David's] roof" by ordering her to vacate the premises in approximately 45 days.

David further argues the temporary spousal support order of $2,417 for seven of the 10 months was excessive because it was more than 50 percent of his net bi-weekly earnings of $2,266.06. The measure of his ability to pay, however, is more aptly compared to his monthly net earnings of $4,532, not his bi-weekly net earnings. Although David had monthly expenses, including debt payments, Anna also had monthly expenses, including credit card debt. Unfortunately, the dissolution of a marriage often imposes financial hardship on both parties. The trial court did not abuse its discretion in attempting to equitably divide that burden pending finalization of the dissolution.

David also raises several challenges to the October 3, 2012 order of $3,229 per month for September 2012 through November 2012. Even if his arguments had merit, any error was harmless because the court's November 29, 2012 order reduced the award to $2,419 retroactive to September 1, 2012. (See Code Civ. Proc., § 475 [no judgment decision or decree shall be reversed absent showing error prejudicial].)

2. *The Trial Court Did Not Abuse Its Discretion in Awarding Attorney Fees*

Section 2030 authorizes a need-based award of attorney fees and costs to "ensure that each party has access to legal representation to preserve each party's rights" in a proceeding for dissolution of marriage and in any proceeding subsequent to entry of a judgment of dissolution. (§ 2030, subd. (a)(1).) In determining whether to order one

---

7    The court explained it usually did not order temporary spousal support while parties were living together because "it's sort of silly . . . for one spouse to pay the other spouse support, which is to some extent to be used to pay for the housing when they're all living in the same house."

9

party to pay another party's fees and costs and, if ordered, what amount shall be paid, the court is to consider the respective incomes and needs of the parties and all other circumstances affecting the parties' respective abilities to pay for legal representation. (§ 2030, subd. (a)(2).) "The court may make an award of attorney's fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a); see *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 865.)

Although the payee-spouse's need and the payor-spouse's ability to pay are the central factors to be considered, the trial court retains broad discretion in determining the amount of fees to award pursuant to section 2030, particularly with respect to the nature and complexity of the litigation. (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 314; *In re Marriage of Keech, supra*, 75 Cal.App.4th at pp. 865-866.) "'The need of a spouse for an award of attorney's fees and the amount of that award are matters addressed to the sound discretion of the trial court. [Citation.] The exercise of this discretion will not be disturbed on appeal "without a clear showing of abuse."'" (*In re Marriage of Schaffer* (1984) 158 Cal.App.3d 930, 935-936.) "'The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.'" (*In re Marriage of Keech*, at p. 866.)

David argues the award of attorney fees did not meet the two main criteria for imposition of fees in section 271, subdivision (a). That section, however, governs the award of attorney fees as a sanction for conduct that increases litigation costs. (See § 271, subd. (a) ["court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys"; award "is in the nature of a sanction"]; *In re Marriage of Simmons* (2013) 215 Cal.App.4th 584, 592 [§ 271 "allows for a sanctions award of attorney fees and costs based on conduct that frustrates the

10

policies of settlement, cost reduction, and cooperative resolution of litigation"].) Here, the award of attorney fees was based on section 2030 and was need-based. Any argument based on the appropriate factors to be considered pursuant to section 271, subdivision (a), is misplaced.

With respect to the amount of the fee award, the trial court did not clearly abuse its discretion. Even imputing as much income to Anna as David contends is appropriate, there was a disparity between that amount and his income and thus the parties' respective ability to pay attorney fees. The award of $5,000 was less than half the amount Anna's first attorney estimated was necessary through finalization of the dissolution. Indeed, David included on his December 13, 2012 income and expense declaration an estimate of $10,000 for his own attorney fees. For the reasons discussed in connection with David's challenge to the temporary spousal support award, we cannot say no judge could have reasonably ordered David to contribute $5,000 to Anna's attorney fees.

3. *The Court Did Not Abuse Its Discretion in Denying David's Motion for Reconsideration*

A motion for reconsideration under Code of Civil Procedure section 1008 must be "based upon new or different facts, circumstances, or law." "[F]acts of which the party seeking reconsideration was aware at the time of the original ruling are not 'new or different.'" (*In re Marriage of Herr* (2009) 174 Cal.App.4th 1463, 1468.) In addition to demonstrating there are new or different facts, circumstances or law, the party seeking reconsideration must provide a satisfactory explanation for the failure to offer the new evidence earlier. (*Ibid.*) We review an order denying a motion for reconsideration for abuse of discretion. (*Reynolds v. City of Calistoga* (2014) 223 Cal.App.4th 865, 871.)

David's motion for reconsideration of the court's November 29, 2012 order was not based upon any new or different facts of which he was unaware before that hearing (for example, that he had defaulted on his mortgage payments, the percentage of his net pay the temporary spousal support constituted and the amount of his outstanding debt). At the hearing on the motion for reconsideration David explained he had not known spousal support would not be tax deductible and had not realized the extent of the

11

financial hardship he would suffer as a result of the order.  However, David's lack of knowledge of the financial ramifications of a spousal support order or appreciation of the hardship he might suffer as a result of the temporary spousal support award given his then-existing circumstances does not constitute new or different facts or law warranting reconsideration.  The trial court did not abuse its broad discretion in denying David's motion.

## DISPOSITION

The orders are affirmed.  Anna Grimm is to recover her costs on appeal.


PERLUSS, P. J.


We concur:


WOODS, J.


ZELON, J.


12