Filed 2/19/26  Marriage of Kevin T. and Elizabeth T. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re the Marriage of KEVIN T. and ELIZABETH T. | D085924 |
| KEVIN T., | |
| Respondent, | (Super. Ct. No. 24FL004544N) |
| v. | |
| ELIZABETH T., | |
| Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Renee Stackhouse, Judge.  Affirmed in part, reversed in part, and remanded.

Bickford Blado & Botros, Andrew J. Botros, and Emiliza P. San Diego for Appellant.

Dennis Temko for Respondent.

Elizabeth T. (Elizabeth) appeals from a family court order setting child support and denying her request for temporary spousal support.  She argues on appeal that (1) the court improperly imputed her monthly expenses as income when calculating support amounts owed by her spouse, Kevin T.

(Kevin), and (2) the court should have calculated Kevin's investment income based on the rate of return for United States Treasury Bonds, not the actual rate of return.

We discern no abuse of discretion in the family court's use of Kevin's actual investment income to calculate support. We conclude, however, that the court abused its discretion by imputing Elizabeth's monthly expenses as income without a legal basis for doing so, and without evidence in the record to support a finding that family gifts should be considered income. Accordingly, we reverse in part and remand for the court to reconsider that portion of its order.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. *The Marriage*

Kevin and Elizabeth were married in 2016. Elizabeth stopped working and stayed home beginning in 2018. The couple had a son in 2019 and twin daughters in 2021. Kevin worked for periods of time during the marriage, but also stopped working in April 2020. They nonetheless had a high standard of living while married, traveling frequently and spending on average $25,000 per month. They owned two homes mortgage-free, owned two vehicles, and had over $2 million in savings, largely because of significant financial gifts from Kevin's family and some financial support from Elizabeth's family.

### B. *The Underlying Proceedings*

After being married for about eight years, Kevin and Elizabeth separated in April 2024 and Kevin petitioned for divorce soon after. In May 2024, Elizabeth requested an order awarding child custody and visitation,

child support, temporary spousal support, and attorney fees and costs.[1] Elizabeth's declaration in support of her request stated that after she obtained a temporary restraining order against Kevin on the day they separated, Kevin removed $2 million from their joint savings account and "left less than $80,000 in joint bank accounts" for Elizabeth and the children.[2] She had "no other access to funds of any kind" and needed support from Kevin to ensure she and the children were "able to pay expenses on a monthly basis proceeding forward pending the resolution" of the divorce. Her declaration stated that she does not have a college degree, but does have a jewelry appraiser certificate that would likely only qualify her for a minimum wage position.

In her May 2024 income and expense declaration, Elizabeth listed $25,000 in monthly expenses which included, among other things: $7,250 for the children's private school tuition; $3,500 for groceries and household

---

[1]     Neither party has raised issues on appeal related to child custody and visitation or attorney fees and costs, so we limit our discussion to child and spousal support.

[2]     Kevin filed a motion to strike portions of the appellant's appendix, including an April 10, 2025 order in the restraining order proceedings, arguing that they either post-date the appealed-from order or contain confidential or sensitive information. We denied his motion as to a specific Family Court Services recommendations page, deferred ruling as to the order of April 10, 2025, directed the clerk of this court to redact minors' names and dates of birth from certain pages of the record, and directed the parties to redact the same information from their copies of the appendix. We now deny Kevin's motion to strike documents and references related to the April 10, 2025 order, but we will not consider them because they post-date the appealed-from order and are not relevant to this appeal. (See *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3 [absent extraordinary circumstances, an appellate court " 'will consider only matters which were part of the record at the time the judgment was entered' "].)

supplies; $3,500 for entertainment, gifts, and vacation; $3,530 for incidentals like the children's activities, hobbies, and supplies; and $1,000 for the children's therapy. She listed zero income from salary and wages and $300 in monthly rental property income. Her assets included $70,000 in deposit accounts and about $1.7 million in community property yet to be divided.

As for Kevin, Elizabeth asserted in a memorandum in support of her request that based on his share of custody, previous salary, and investments, the court should impute total monthly income of $14,583, resulting in a guideline child support amount of $7,476. She argued that the court should deviate up from the guideline amount to $25,000 because "neither party has generated enough income during their marriage to maintain their marital lifestyle," having lived almost exclusively "off of gifts from family, the majority of which generated from [Kevin's] family." Ordering only guideline child support, Elizabeth contended, "would result in a material decrease in the children's standard of living while in [Elizabeth's] care," and an increased support amount would be in the children's best interest.

Elizabeth argued in the alternative that if the court was not inclined to deviate upward from guideline child support, it should at least impute monetary gifts from Kevin's family as Kevin's income when calculating guideline support. Citing *In re Marriage of Alter* (2009) 171 Cal.App.4th 718 (*Alter*), Elizabeth asserted that Kevin's imputed monthly income should include $41,667, which she calculated by taking $4 million in purported gifts he received from his grandmother in two $2 million increments and dividing the amount over the course of their eight-year marriage. She further argued that the court should impute investment income which Kevin could be earning from investing the approximately $2 million he withdrew from their savings account into United States Treasury Bonds with a return rate of 5

4

percent per year, equating to $8,333 in investment income per month. Lastly, Elizabeth argued that the court should also consider the $2 million in Kevin's possession when determining temporary spousal support.

Kevin's declaration in response to Elizabeth's request for child and spousal support stated that Elizabeth "has had continued access to our joint savings account with access to funds to pay monthly expenses" and that she has also "received monetary gifts from her family[.]" He requested that the court impute minimum wage income to Elizabeth, as well as investment income from a $600,000 gift she received from her parents, which he calculated to be $2,500 per month using the same 5 percent rate of return on United States Treasury Bonds that Elizabeth argued should apply to his investments. He asked the court to impute the fair rental value of their home, which he asserted was $8,643, to Elizabeth since she was living there. As for his own income, he asked the court to also impute minimum wage to him because he had been out of work for four years and did not believe he could be hired at the same salary he received in the past. He calculated that the guideline child support amount should be $2,566 per month. He contended that the court should deny Elizabeth temporary spousal support and reserve jurisdiction to determine the amount after discovery because "the status quo remains" with Elizabeth living in the mortgage-free family home, receiving financial support from her family, and with Kevin paying bills.

Kevin's September 2024 income and expense declaration showed he has a bachelor's degree in accounting but had been unemployed since April 2020. He listed monthly expenses totaling $13,400 which included, among other things: $7,500 for rent; $3,000 for supervised visitation fees; $1,400 in property taxes, utilities, and fees for the marital home. He listed zero income from salary and wages and zero investment income, but in the category of

5

"additional income," he noted he had received a $2 million inheritance from his grandmother in August 2023. Setting aside community property yet to be divided, his assets included approximately $3.4 million in cash, deposit accounts, and stocks, bonds, and other assets he could "easily sell."

In her reply declaration Elizabeth disputed, among other things, Kevin's assertion that he had been providing sufficient voluntary support. Her declaration also stated that the $600,000 gift from her family was received in 2022, deposited into joint accounts with Kevin, and was no longer available for use because Kevin "drained these accounts" in April 2024. Elizabeth asserted that less than $300 remained in the joint accounts she could access, and that she was forced to take a $50,000 loan from her father. She also noted that according to his income and expense declaration, Kevin had access to more than $3.4 million in assets.

Elizabeth filed another income and expense declaration in September 2024. She continued to be unemployed and listed $24,717 in monthly expenses, zero salary income, and $300 monthly rental property income. The amount of assets listed in deposit accounts, however, was reduced to $25,000 from the previous $70,000 amount.

Kevin also filed another income and expense declaration in October 2024. He also continued to be unemployed and listed monthly expenses of $13,200, slightly less than his previous declaration. He still listed zero income from salary and wages, but this time added average monthly investment income of $5,136.15. He again noted the $2 million inheritance from his grandmother and approximately $3.4 million in sellable assets.

C.    *Hearing and Order*

At the October 2024 hearing on Elizabeth's request for an order, the court informed the parties that it planned to impute each party's expenses to

6

them as their respective income because it had "never seen two folks, who have been unemployed for so long, have such high monthly expenses for their living[.]" The court noted that the parties' proposed imputed income amounts were not high enough "given their fairly lavish lifestyles," and that if they "ha[d] people who can support those lifestyles," the court would "impute that income to them." The court noted that the parties were obligated to provide "care for the children, and both are supposed to be doing their best to be self-supporting . . . in order to take care of those children." The court referenced the $3,500 per month spent on entertainment, gifts, and vacation and $3,500 per month spent on groceries and household supplies from Elizabeth's income and expense declaration, stating that it was "not seeing reasonable expenses for someone who is concerned that they are living on a limited budget."

Elizabeth's counsel argued that the money that had funded Elizabeth's expenses had run out and that she had no other sources of income, whereas Kevin had "access to all the funds." She asked the court to impute "zero income" to Elizabeth.

The court nonetheless said it still intended to use the parties' stated expenses as their imputed income. The court imputed monthly investment income to Kevin in the amount of $4,718 based on the average of the actual rate of return he received on his investments over the three-month period covering June, July, and August 2024. Using those numbers, the court calculated guideline child support amounts for each of three different periods of time where timeshare custody arrangements varied. The court also determined that guideline spousal support would be zero and it declined to deviate upwards. Lastly, the court gave the parties a *Gavron*[3] warning, advising them that they should "take reasonable steps to become self-

---

3     *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705.

supporting within a reasonable period of time[.]" The court reminded the parties "of their obligations to support the children in the matter" and that "the children need a steady support system."

In its December 30, 2024 written findings and order, the family court stated: "The Court imputes income to both parties based on their represented monthly expenses within their respective Income and Expense Declarations." The court found that Kevin had an imputed income of $13,200 in "wages/salary" per month and average "investment/dividend income" of $4,718 per month. The court further found that Elizabeth had an imputed income of $24,717 in "wages/salary" per month. Both of these imputed income figures corresponded exactly to the expenses reported by each of the parties on their most recent income and expense declarations. Using those figures in its DissoMaster[4] calculations, the court ordered that Kevin pay $3,361 in monthly child support for the period of June through August 2024, $3,700 in monthly child support for the period of September through October 2024, and $3,051 in monthly child support beginning in November 2024 when his parenting time was set to increase. The court denied Elizabeth's request for temporary spousal support using the same income figures in its DissoMaster calculations, which "suggest[ed] spousal support be set at zero."

---

[4]    " 'The DissoMaster is a privately developed computer program used to calculate guideline child support under the algebraic formula required by [Family Code] section 4055.' " (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 352, fn. 5 (*Usher*).)

8

DISCUSSION

I

Elizabeth first argues on appeal that the family court improperly imputed her monthly expenses as income when calculating support amounts owed by Kevin. We agree.

As an initial matter, we are not persuaded by Kevin's assertions that Elizabeth has forfeited her arguments. He contends, among other things, that Elizabeth failed to summarize the facts in the light most favorable to him, failed to present a legal argument, and waived any challenge to the court's imputing of income by failing to object below. It is true that an appellant's opening brief must include a summary of the *significant* facts with appropriate citations to the record. (Cal. Rules of Court, rule 8.204(a)(1)(C), (a)(2)(C).) As discussed further below, the facts significant to this appeal relate to the amount of income the court imputed to Elizabeth and its connection to either her earning capacity or recurring monetary gifts. Kevin contends Elizabeth excluded certain family gifts she received during marriage from her summary of the facts. Elizabeth's brief, however, does state that the parties "lived off of monetary gifts they received *primarily* from Kevin's family" and then cites to her declaration detailing the gifts they each received.

Kevin goes on to raise factual disputes in his brief that are peripheral or not properly before us, such as conflicts in testimony about inheritances or which party was the children's "primary" caregiver. He also argues that Elizabeth failed to object to the court's income imputation and has made no "viable legal argument" in her opening brief. As noted, however, Elizabeth's counsel expressly argued against the court's decision to impute expenses as income, asserting that Elizabeth had no sources of income aside from loans

9

requiring repayment and funds in a nearly depleted joint account and arguing that the court should impute "zero income" to her. As for the viability of Elizabeth's legal arguments on appeal, for the reasons discussed below, we do not share in Kevin's view of their deficiencies. Because we discern no material misstatements, misrepresentations, or omissions of the relevant facts or law that would "instantly 'undo' an otherwise effective brief," we decline to find forfeiture and will address the appeal on the merits. (*Pappas v. Chang* (2022) 75 Cal.App.5th 975, 985.)

We review the family court's child and temporary spousal support awards for abuse of discretion. (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove*).) However, in reviewing a child support order, courts recognize that "determination of a child support obligation is a highly regulated area of the law, and the only discretion a trial court possesses is the discretion provided by statute or rule. The trial court has a duty to exercise an informed and considered discretion with respect to the [parent's child] support obligation and its discretion is not so broad that it may ignore or contravene the purposes of the law." (*Usher, supra*, 6 Cal.App.5th at p. 357 [cleaned up].)

Family courts calculate child support in accordance with the mathematical formula contained in Family Code[5] section 4055. (*In re Marriage of Williamson* (2014) 226 Cal.App.4th 1303, 1312 (*Williamson*).) This mandatory formula "takes into account both parents' 'net monthly disposable income' (§ 4055, subds. (a), (b)), which is determined based upon the parents' 'annual gross income' (§ 4058). Section 4058, subdivision (a), defines 'annual gross income' as 'income from whatever source derived,' and

---

[5]      Undesignated statutory references are to the Family Code.

lists more than a dozen possible income sources to be considered as part of annual gross income." (*Alter, supra*, 171 Cal.App.4th at p. 731.)

If a parent's annual gross income is unknown, a family court may decide to impute income under section 4058, subdivision (b), to a spouse for support purposes based on their earning capacity. We also review that decision under the abuse of discretion standard. (See *In re Marriage of Destein* (2001) 91 Cal.App.4th 1385, 1393 (*Destein*).) A decision on the specific amount of earning capacity to be imputed, however, is reviewed under the substantial evidence standard. (See *In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 930 (*Cohn*).) The court's decision must be based on evidence that the spouse has the ability and the opportunity to earn the amount of income imputed by the court. (*Ibid*.) " 'Figures for earning capacity cannot be drawn from thin air; they must have some tangible evidentiary foundation.' " (*In re Marriage of Smith* (2001) 90 Cal.App.4th 74, 82 (*Smith*).)

In *Alter* and its progeny, courts have recognized that monetary gifts may be considered income for purposes of determining child support or ability to pay fees "so long as the gifts bear a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit." (*Alter, supra*, 171 Cal.App.4th at pp. 736–737; see, e.g., *Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 646–647 (*Kevin Q.*) [no abuse of discretion in family court's consideration of "regular, recurrent monetary infusions made by [spouse's] father to her over a lengthy period of time" when assessing spouse's ability to pay attorney fees]; cf. *County of San Diego v. P.B.* (2020) 55 Cal.App.5th 1058, 1075–1076 [no abuse of discretion where family court declined to impute income from spouse's parents because the payments "were made for a discrete purposes and they have since ceased"]; *Anna M. v.*

*Jeffrey E.* (2017) 7 Cal.App.5th 439, 453–455 [no abuse of discretion where family court determined cash or cash-equivalent financial support was not "income" for child support purposes because there was no familial relationship between the spouse and her benefactor, the amount given varied month to month, and the gifts occurred over an unestablished duration]; *Williamson, supra*, 226 Cal.App.4th at pp. 1314–1315 [no abuse of discretion where family court did not impute income in the form of one-time gifts, irregular cash advances, and cash gifts that had ceased].)

Here, citing no statutes or case law, the court decided to impute the parties' expenses as income without drawing any discernible connection to their earning capacities or to any recurrent monetary benefit. The court made no findings regarding what either party has the ability and the opportunity to earn (see *Cohn, supra*, 65 Cal.App.4th at p. 930), nor did the court discuss any specific financial gifts from family members. Instead, the court said it was rejecting the parties' proposed imputed incomes "given their fairly lavish lifestyles" and imputing their expenses because the parties "have people who can support those lifestyles." But not only did the court cite no evidence that any gifts Elizabeth received bore "a reasonable relationship to the traditional meaning of income as a recurrent monetary benefit," the record before us would not support such a finding. (*Alter, supra*, 171 Cal.App.4th at pp. 736–737.) Although Elizabeth acknowledged in her declarations that she received a $600,000 gift from her family in 2022, there was no evidence that the one-time gift was part of a series of "recurrent payments made over a lengthy period of time" to cover Elizabeth's living expenses. (*Kevin Q., supra*, 195 Cal.App.4th at p. 645, fn. 12.) While she received "smaller gifts on a sporadic basis" between about $15,000 and $30,000 throughout the marriage from her family, she stated in her

12

declaration that they "ceased after 2021." And while Elizabeth borrowed money from her father and sister, there was no evidence those loans were recurrent in nature, and loan proceeds are traditionally not considered income. (*In re Marriage of Rocha* (1998) 68 Cal.App.4th 514, 517.)

Even Kevin, who had the burden of producing evidence of Elizabeth's earning capacity, only asked the court to impute to her a minimum wage of $2,773 per month in the "wages + salary" DissoMaster category. If the court had followed all of Kevin's requests to impute investment income and the rental value of the marital home, the resulting guideline child and spousal support amount would still have been significantly greater than what the court ultimately awarded.

While we recognize that unlike with child support, no statutory guidelines restrict the court's determination of a temporary spousal support amount (*Wittgrove, supra*, 120 Cal.App.4th at p. 1327), the court here made no findings to support its determination beyond noting the parties' lack of employment and lavish lifestyle. The court has broad discretion to fix temporary spousal support, but it must still base the amount on a spouse's need and the other's ability to pay. (*Ibid.*; *In re Marriage of Lim & Carrasco* (2013) 214 Cal.App.4th 768, 773.)

Though we sympathize with the court's desire to encourage the parties to self-support and make prudent financial decisions, a support order cannot be "eyeball[ed]" to produce an imputed amount without sufficient evidentiary support. (See *In re Marriage of Loh* (2001) 93 Cal.App.4th 325, 327, 330, 336.) Kevin has cited no authority that would allow a court to impute monthly expenses as income without showing any actual capacity to earn that amount. An imputed income amount must have " 'some tangible evidentiary foundation.' " (*Smith, supra*, 90 Cal.App.4th at p. 82.) The

13

probability of being able to earn the amount imputed "must be *evidenced*, not merely suspected." (*In re Marriage of Berger* (2009) 170 Cal.App.4th 1070, 1079.) Here, as in general, evidence of lifestyle is an insufficient substitute for proper evidence of income or earning capacity. (See *In re Marriage of Loh*, at p. 327.) Accordingly, we reverse the court's child and temporary spousal support order and remand for the court to reconsider its imputed income calculations.[6]

## II

Elizabeth also argues that the family court should have calculated Kevin's investment income based on a 5 percent rate of return for United States Treasury Bonds, not the actual rate of return on his assets. We disagree.

"A court's decision to impute income at a particular rate of return is reviewed for abuse of discretion, but the figure for imputed return must be reasonable and have some tangible evidentiary foundation." (*Usher, supra*, 6 Cal.App.5th at p. 361 [cleaned up].) As with imputed income, the rate of return "cannot be drawn from thin air." (*Ibid.*) Here, the family court based its calculation on the average actual rate of return Kevin received on his investments over the three-month period between June and August 2024. This was not "an unreasonably low rate of return" as Elizabeth contends, but rather a rate of return supported by recent account statements. (*Usher*, at pp. 362–363 [using a 1 percent rate of return on non-real estate investments was unreasonably low given lack of evidence showing actual return on assets].) The court was not compelled to defer only to Elizabeth's chosen

---

[6] We need not and do not address Elizabeth's argument that the court imputed income without making express findings regarding the best interests of the children.

investment strategy, and there was no evidence Kevin's investment decisions were unreasonable or made in bad faith. (See *Destein, supra*, 91 Cal.App.4th at pp. 1394–1396.) "The decision to impute rests on an analysis that is particularly fact intensive[,]" and courts need not invariably exercise their discretion in favor of creating income. (*Id.* at p. 1396.) Moreover, although Elizabeth contended in her opening brief that the imputed investment income only constituted a 1.1 percent annual yield, she conceded in her reply brief that the court actually applied a 2.8 percent rate of return. Given the facts in this case, we find no abuse of discretion in the court's decision to impute investment income to Kevin.

## DISPOSITION

The family court's December 30, 2024 order is reversed to the extent it provides child support and temporary spousal support. The matter is remanded to the family court to reconsider those aspects of the order in light of this opinion. In all other respects, the order is affirmed. Elizabeth shall recover her costs on appeal.

BUCHANAN, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.

15