Filed 12/21/20  Marriage of Yacullo CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of TIFFANY M. and VICTOR F. YACULLO | |
| | D076231 |
| TIFFANY MYLISHA YACULLO, | |
| Respondent, | (Super. Ct. No. 18FL009144N) |
| v. | |
| VICTOR FRANK YACULLO, | |
| Appellant. | |

Appeal from an order of the Superior Court of San Diego County, Harry L. Powazek, Judge.  Affirmed.

Amanda L. Harris, Bruce M. Beals, and Stephen M. Hogan for Appellant.

Stephen Temko and Dennis Temko for Respondent.

## INTRODUCTION

Victor Frank Yacullo appeals from an order granting temporary spousal support to Tiffany Mylisha Yacullo.  He argues the trial court (1) abused its discretion by making various errors, including in determining his income; and (2) erroneously failed to make requested findings under

Family Code section 4320.[1]  We conclude Victor has not met his burden on appeal to show the court abused its discretion or otherwise erred in granting temporary spousal support.  We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Victor and Tiffany married in September 2014.  In May 2016, Victor began operating Relyonus Medical Group (RMG), a medical device distributor.  Tiffany ran a company, CAT Management, that provided services to RMG.  Victor and Tiffany have no children together.  Victor has two minor children from a prior marriage, and his ex-wife passed away.  Tiffany has no children.

Tiffany filed for dissolution of marriage on August 2, 2018.[2]  The following month, she filed a request for order seeking temporary spousal support, indicating she had no current income.  In her income and expense declaration, she stated CAT Management had been receiving $15,000 per month from RMG until March 2018.  She listed substantial cash assets and other property, and monthly expenses of $18,950 that included rent.

Victor filed a responsive declaration in January 2019.  He stated RMG had an agreement to distribute medical devices for a company called Smith & Nephew.  He explained the commission rate fell each year, but other costs rose and "average sales prices typically [went] down 2–4% per year . . . ."  He also lost multiple doctors in 2018, resulting in reduced revenue.  He did note

---

[1]    Undesignated statutory references are to the Family Code unless noted.  We also use first names for clarity, and no disrespect is intended.  (*In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1.)

[2]    The parties disagree on the date of separation (Victor contends it was in December 2017, and Tiffany contends it was in August 2018), and whether RMG is Victor's separate property.  These issues are not material to this appeal.

the "industry [was] growing at 1-2% annually" and there was "potential for a separate sales force to sell . . . ancillary lines" outside the Smith & Nephew line. Victor also said Tiffany's expenses did not exceed $10,000 per month, and she was living in her grandfather's condominium rent-free.

In March 2019, Tiffany prepared another income and expense declaration. Pertinent here, she now listed monthly expenses of $138,158.04, which now included mortgage payments, significant utility expenses, and $100,000 for savings and investments.

In April 2019, Tiffany filed a reply declaration and points and authorities. She stated they had purchased a 13,280 square foot home on 3.6 acres of land, with four kitchens and nine fireplaces; a sport court; and a pool and koi pond. They listed the house for sale for nearly $10 million. She also stated they "drove exotic cars including a Rolls Royce . . . , Bentley and Aston Martin"; "vacationed all over the world"; and spent large amounts of money on wine and shopping while traveling. She explained the second income and expense declaration reflected their standard of living while married.

Tiffany also provided a declaration from her forensic accounting expert, Alfred Warsavsky, regarding Victor's income available for support. He used 2017 income, explaining he had not received all requested RMG documents and an analysis of 2018 could not be completed. He used the DissoMaster program to compute guideline spousal support, based on an average monthly income of $504,631 that included $9,600 of "monthly depreciation expense." He computed support of $111,953.

In May 2019, Victor filed his income and expense declaration. He stated he was Chief Executive Officer of RMG, and indicated he received both guaranteed payments and distributions. He listed significant assets, and monthly expenses of $45,809.34 that included child-related costs.

3

Victor also provided declarations from his forensic accounting expert, Dennis A. Pearson. Pearson determined his average monthly income for 2018 was $406,032, for an after-tax income of $226,239. He confirmed that under RMG's agreement with Smith & Nephew, the commission rate falls each year, with a decline of 1% in May 2018 and a decline of 2% in May 2019. As a result, he opined that if RMG generated the same sales levels in 2019, there would be a significant reduction in income (i.e., revenue), and Victor's monthly income for the next 12 months would be approximately $301,050 or $169,808 in after-tax income. He attached his income calculations for 2016, 2017, and 2018, and noted the average income for the 32 month period between when RMG started and the end of 2018 was $434,228. In addition, Pearson criticized Warsavsky for "add[ing] back 100% of the depreciation," stating "RMG's primary fixed assets represent . . . personal property that wear[s] out and need to be replaced" and "an amount of economic depreciation . . . is warranted."

Pearson also provided a declaration on the marital standard of living (MSOL), and opined Tiffany's "average monthly lifestyle expenses . . . for the three-year period prior to the date of separation was approximately $72,566." This figure was based on an average of $16,544 for 2015, $73,526 for 2016, and $127,628 for 2017.

Warsavsky provided reply declarations. He felt Pearson's view that there would be a significant reduction in income was speculative, explaining that although the commission rate declined, RMG could increase its sales. He also disagreed with Pearson's reliance on the 2018 tax return. Warsavsky indicated he received a draft copy of the tax return, and understood it was "currently on extension." He further indicated the supporting documents provided to Tiffany's counsel by the tax preparer were insufficient. As for the

4

MSOL, Warsavsky criticized Pearson for relying on 2015, which preceded RMG's formation and was two to three years prior to the date of separation. He calculated the MSOL using two scenarios: $109,594, using a 33.3% weight for 2016 expenses and a 66.7% weight for 2017, and $127,628, using 2017 alone.

Victor filed his reply declaration and points and authorities. He disputed certain assertions by Tiffany, including the extent of their travels and spending, and noted the house was only appraised at $7.5 million. He was working on getting remaining documentation from RMG. He also filed a request for findings under section 4332, regarding section 4320. As we discuss *post*, section 4332 addresses certain findings in dissolution proceedings, and section 4320 lists factors for awarding permanent spousal support.

On May 15, 2019, the trial court held a hearing on Tiffany's request for temporary spousal support.

Warsavsky testified first, and provided testimony consistent with his declarations. On cross-examination, he acknowledged 2017 was Victor's highest income year. He also acknowledged he saw ledgers and financial statements for 2018, but maintained he lacked certain supporting documents.

Pearson similarly provided testimony in line with his declarations, and also elaborated on certain matters at issue in this appeal. He opined income should be based on 2018, because it was the most current year for which they had information and the tax return was final and simply had to be signed. He criticized Warsavsky for just using 2017, stating, "if you're going to average, you're either going to average all three years based on the up and down income flow, but the idea of picking out 2017, which is the highest net income year, when you already have in front of you 2018 showing a reduced

5

profit, in my mind, is not the correct approach." He also stated he included information for 2016, 2017, and 2018 in his analysis, in case the court wanted to "take an average for a period of years." On cross-examination, Tiffany's counsel asked him about the two-year average for 2017 and 2018, and Pearson agreed it would be $449,079. The trial court later asked him to confirm the 32 month average was "about $434,000," which he did. The court also asked him if he had the breakdown for each year; he responded yes, and that the numbers were $389,674, $492,126, and $406,032.

Pearson acknowledged the RMG agreement left Victor "free to sell . . . third party lines," there was no bar on increasing sales, and they "don't know what the ending sales for 2019 will be." When Victor's counsel subsequently noted the agreement was an exhibit to Pearson's income analysis, the court said, "I don't find that to be helpful. . . . [¶] . . . [¶] . . . A lot of what we've talked about that is really speculative. I don't know what's going to happen. I'm trying to deal with what happened for the past three years."

Pearson also testified that unlike Warsavsky, who added back all the depreciation, he "added back the accelerated depreciation and calculated an economic straight line depreciation . . . ." Later, the court commented, "And you added back some of the depreciation." Pearson responded, "Right," explaining Warsavsky used accelerated depreciation, "so when they buy things, they pretty much write it off," whereas he "added that all back as [Warsavsky] did, but then on a straight-line basis . . . [he] allowed depreciation over five or seven years . . . ."

The trial court had the parties submit closing arguments in writing. Victor asked the court to award no more than $20,000 per month, citing "equitable factors," and attached a DissoMaster using the 2018 income figure. He also requested Pearson's MSOL number, $72,566, be used. Tiffany

6

proposed using an average of 2017 and 2018, and provided DissoMaster reports for three approaches: one using Warsavsky's income numbers ($514,230 in monthly income, resulting in support of $113,956), a second using Pearson's ($449,079 in income, support of $99,723), and a third averaging them ($481,654 in income, support of $106,839) She also identified two MSOLs, one using Pearson's numbers for 2016 and 2017 ($100,577), and one using a 24 month calculation by Warsavsky ($117,676).

The trial court sent a letter to the parties with its findings and ruling, and asked Tiffany's counsel to prepare an order. Victor moved ex parte for the court to make the previously requested findings and to correct certain alleged errors. The trial court fixed a typographical error, and rejected the other requests.

The trial court entered its Findings and Order after Hearing on July 3, 2019. The court began by identifying several "[f]actors of concern":

> "1. The relatively brief existence of the 'business' of approximately three to four years; [¶] 2. The substantial monthly gross income resulting from said business made available to Respondent as testified by both experts; [¶] 3. That Petitioner was employed by the business during their relationship and has not sought gainful employment since the date of separation other than obtaining a New York State Real Estate License; [¶] 4. Respondent is the primary parent of two minor children whose expenses are reflected in his most recent Income and Expense Declaration; [¶] 5. The length of the marriage between 3 -4 years; [¶] 6. The variability of the business income."

The court stated it "considered all income available to the parties pursuant to Family Code section 3048 as well as considering . . . the parties' marital standard of living for a marriage of no more than four years." It found Tiffany "provided various DissoMaster reports requesting

7

spousal support somewhere between $99,723.00 . . . [to] $113,956.00"; the requests were based on Warsavsky's "review of one year of income resulting from the business (2017)"; and he did "not consider[] the nature and extent of income . . . for the years 2016 and 2018." The court then addressed Victor, stating his request was "based on Mr. Pearson's review of the marital standard of living for Petitioner of approximately $77,000.00" and finding:

> "[Mr. Pearson's] report appears to be more even-handed in that he considered and provided to the Court, various estimations of [Victor's] gross monthly income for a period of 12 months (2018, $406,032.00); for 32 months, $434,228.00[;] or a combination for 2017 and 2018 in the amount of $449,079.00. Additionally, in consideration of said estimates, he has added back 'depreciation' in calculation of [Victor's] gross monthly income. [¶] . . . The Court finds Mr. Pearson's . . . [r]eport even-handed in that it considers the nature and extent of the income resulting from the business for a period of more than one year."

The trial court determined Victor's "gross monthly income resulting from the business as recommended by Mr. Pearson, will be set in the amount of $449,079.00 per month." After applying various deductions, the court found Victor's net monthly income was $231,320. The court ordered him to pay spousal support of $99,000 for 24 months, and set arrearages of $891,000.00. Victor timely appealed.

DISCUSSION

I.     *Applicable Law*

"California law provides for two distinct types of spousal support— temporary and permanent. 'Awards of temporary spousal support do not serve the same purpose, nor are they governed by the same procedures, as awards for permanent spousal support. . . .' " (*In re Marriage of Mendoza & Cuellar* (2017) 14 Cal.App.5th 939, 942 (*Mendoza*).) " 'Whereas permanent

8

spousal support "provide[s] financial assistance, if appropriate, as determined by the financial circumstances of the parties after their dissolution and the division of their community property," temporary spousal support "is utilized to maintain the living conditions and standards of the parties in as close to the status quo position as possible pending trial and the division of their assets and obligations." ' " (*In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327 (*Wittgrove*).)

"Generally, temporary spousal support may be ordered in 'any amount' based on the party's need and the other party's ability to pay." (*Wittgrove, supra,* 120 Cal.App.4th at p. 1327.) "The court is not restricted by any set of statutory guidelines in fixing a temporary spousal support amount. [Citation.] [¶] Rather, in exercising its broad discretion, the court may properly consider the 'big picture' concerning the parties' assets and income available for support in light of the marriage standard of living." (*Ibid.*)

We review temporary spousal support orders for abuse of discretion. (*Wittgrove, supra*, 120 Cal.App.4th at p. 1327.) "We examine the challenged order for legal and factual support. 'As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it.' " (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1443 (*Blazer*); see *In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197 [" 'appropriate test of abuse of discretion is whether or not the trial court exceeded the bounds of reason' "].)

II.    *Analysis*

A.    *Determination of Temporary Spousal Support*

Victor contends the trial court abused its discretion in awarding temporary spousal support of $99,000. We disagree.

9

Victor's expert, Pearson, believed 2018 income should be used, but had provided calculations for 2016, 2017, and 2018 so the court could take an average and agreed on cross-examination that the average for 2017 and 2018 would be $449,079. The trial court later asked Pearson to confirm his 32-month average and his income numbers for each year. Then, in the parties' closing briefs, Tiffany identified the $449,079 figure as based on Pearson's calculations and used it for one of her three proposed support calculations, $99,723. Tiffany also proposed two MSOL figures over $100,000, encompassing 2016 and 2017, and one was again based on Pearson's calculations. Victor, meanwhile, argued for $20,000 in support based on equitable factors.

On this record, we see no abuse of discretion. The court's income figure of $449,079 was supported by Pearson's calculations regarding Victor's 2017 and 2018 income, and the $99,000 award was consistent with both guideline support for that income amount and MSOL evidence for the two years preceding separation (i.e., 2016 and 2017). (See *Blazer*, *supra*, 176 Cal.App.4th at p. 1443 [to the extent " 'exercise of discretion is based on the facts of the case, it will be upheld "as long as its determination is within the range of the evidence presented" ' "].) Further, Pearson acknowledged averaging could capture "up and down income flow," and the court's questions suggested it was considering using an average. The court could reasonably conclude its figure was representative of Victor's income, as it reflected his higher earnings in 2017 and lower earnings in 2018 (while excluding 2016, during which RMG started, and without speculating income would continue to decline in 2019). The court was not required to accept Pearson's preference for using 2018 alone, even if it otherwise found him "even-handed." (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099 [trial court "sits as

10

trier of fact" and is " 'sole judge of the credibility and weight of the evidence' "]; *see Friddle v. Epstein* (1993) 16 Cal.App.4th 1649, 1659 ["trier of fact 'is entitled to accept or reject all or any part of the testimony of any witness' "].)

Victor's arguments focus on the trial court's income analysis and various minor claims of error, and they are not persuasive. He contends the court erred by including 2017 in his income sample, because it was his "best year ever" and remote in time, whereas Pearson "provided data for 2018 and 2019 showing a decline in income." The court did use 2018 data, as its income figure was based in part on 2018 income. As for 2019, Pearson predicted income would fall, by assuming sales would remain constant and applying the declining commission rates in the RMG agreement. But Victor stated the industry was growing, and Pearson conceded he was not barred from selling third-party lines or increasing sales. Warsavsky regarded Pearson's prediction as speculative, and the trial court reasonably appeared to agree.

Victor's reliance here on *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808 (*Rosen*) and *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075 (*Riddle*) is misplaced. In *Rosen*, the trial court erred by accepting the wife's expert's opinion as to the goodwill value of the husband's law practice, where his income varied dramatically over the prior four years and the expert relied solely on the most recent and highest year. (*Rosen*, at pp. 816, 819-820.) The Court of Appeal reversed, explaining the single year was not representative and the expert should have averaged earnings in calculating goodwill. (*Id.* at p. 820.) In *Riddle*, the trial court abused its discretion by using two months of income to calculate child and spousal support by the husband, who was a financial advisor with an unusual compensation

11

arrangement. (*Riddle*, at pp. 1077, 1083.) Citing *Rosen*, the Court of Appeal explained the "time period on which income is calculated must be long enough to be *representative*." (*Id.* at p. 1082; see *id.* [court "is trying to predict likely income for the immediate future, as distinct from extraordinarily high or low income in the past," italics omitted].) The court noted that although the preceding 12 months was generally appropriate, a longer period could be used if it "were more representative . . . ." (*Id.* at pp. 1083-1084; see *id.* ["two-or three-year average" could be suitable for a book author, while longer period could be problematic for a salesperson in a volatile industry].)[3]

In short, *Rosen* and *Riddle* require representative income calculations, counsel against using arbitrarily short periods, and support using longer ones when appropriate. (*Rosen, supra*, 105 Cal.App.4th at p. 820; *Riddle, supra*, 125 Cal.App.4th at pp. 1082-1084.) These principles do not help Victor. The trial court did not base its income determination solely on 2017, the period to which Victor objects. Rather, the court used a longer period, which encompassed both 2017 and 2018, the year on which his expert wanted to rely, and which properly captured higher and lower earnings.

Victor also contends multiple errors in the trial court's order reflect the court abused its discretion. However, we generally do not reverse for typographical or other minor errors, and he does not establish they were

---

[3] We disagree with Victor that *Rosen* approved of using multiple years only for goodwill, and rejected such use for income. His citation is to *Rosen's* discussion of cash flow, which did not involve averaging and is otherwise distinguishable. (*Rosen, supra*, 105 Cal.App.4th at p. 824 [trial court erred by relying on 1996 income for cash flow, where there was evidence of 1998 income].) Another case he cites here, *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, is likewise distinguishable. (*Id.* at p. 105 [trial court erred by relying solely on 2013 income, where 2014 tax returns were in evidence].)

material to the court's decision. (9 Witkin, Cal. Procedure (5th ed. 2020) Appeal, § 425 ["[c]lerical or typographical mistakes . . . are properly disregarded"], § 426 [accord; misused terms]; see, e.g., *Cummings v. Columbia Pictures Corp.* (1935) 8 Cal.App.2d 244, 250 [judgment should not be reversed for " 'mere clerical error' "]; *Hanselman v. Meadville* (1938) 12 Cal.2d 259, 260 (*Hanselman*) [affirming court findings; "use of the word 'cross-complaint' to designate the answer was a pure inadvertence"].)

Two purported errors appear to be simple typographical mistakes. Victor contends the trial court stated it considered income under "section 3048," but that section concerns custody and visitation orders; and, even if a "mere typographical error," it "suggests a disturbing lack of care." Tiffany proposes the court meant section 4058, which addresses income for support. Victor also argues the court's identification of Pearson's MSOL number as $77,000, instead of $72,566, "can only be arbitrary." We disagree these minor and presumably inadvertent misstatements imply a lack of care, much less arbitrary decisionmaking. (*See Hanselman*, *supra*, 12 Cal.2d at p. 260.)

Two other alleged errors focus on the trial court's statements regarding the income evidence, and are similarly inconsequential. Victor contends that because Warsavsky relied on his own numbers in only one DissoMaster, but the court stated Tiffany's "various DissoMaster reports" were based on his review of 2017 income, the court "did not understand critical facts." Not so. The critical issue was the income figure, and the court correctly attributed its $449,079 figure to Pearson, as it was based on his calculations. Relatedly, Victor contends the trial court "falsely state[d]" Pearson's report included the $449,079 figure and "mistaken[ly] belie[ved]" he recommended it, as it was Tiffany's counsel "who came up with" the figure. But Pearson had provided

the calculations for each year, so the court could take an average; Tiffany's counsel then properly elicited his testimony that the average of 2017 and 2018 was $449,079. We ascribe no significance to the court's use of the word "report," instead of "testimony." (Cf. *Baillargeon v. Myers* (1919) 180 Cal. 504, 510 [no prejudicial error from trial court's use of term " 'testimony' " instead of " 'evidence,' " noting they are " 'frequently used synonymously' "].) As for the court's statement that Pearson "recommended" the $449,079 figure, it could have been referring to the underlying numbers. Even if the court made a minor misstatement, those numbers still supported its income figure.

The final alleged error involves, at most, an incomplete finding. Victor claims the trial court erroneously stated Pearson "added back 'depreciation' " and did not "appreciate [the] distinction" between the experts' approaches. Pearson testified about their methods; both experts added it back, but he then subtracted straight-line depreciation. When the court later commented to Pearson that he "added back some of the depreciation," he stated "[r]ight" and reiterated the differing approaches. The court's statement in its order was thus accurate, if incomplete, and does not imply it misunderstood the experts' methods.

Victor maintains we must view the issues collectively. Doing so does not compel a different result, given they are all minor and none appear to have any material bearing on the key issues here: determination of his income and the support award. We likewise reject Victor's claim that the errors reflect the court's "findings . . . have no support . . . in the record . . . ." They do, for the reasons discussed *ante*.[4]

---

4     We also reject Victor's argument that the court "failed to exercise its discretion at all." (Compare, e.g., *In re Marriage of Gray* (2007) 155

14

B.     *Section 4320 Factors*

Victor also contends the trial court erred by failing to grant his request for findings under section 4332, regarding section 4320.  He does not establish error on this basis, either.

Permanent spousal support "is constrained by numerous statutory factors set out in section 4320." (*In re Marriage of Murray* (2002) 101 Cal.App.4th 581, 594, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 995.)  One factor identifies the "goal that the supported party shall be self-supporting within a reasonable period of time," and that except in marriages of long duration, a " 'reasonable period of time' . . . generally shall be one-half the length of the marriage." (§ 4320, subd. (l).)  Other factors include each party's ability to maintain the marital standard of living.  (§ 4320, subd. (a).)  As for section 4332, it provides:  "In a proceeding for dissolution of marriage or for legal separation of the parties, the court shall make specific factual findings with respect to the standard of living during the marriage, and, at the request of either party, the court shall make appropriate factual determinations with respect to other circumstances."

As discussed *ante,* temporary spousal support rests within the trial court's broad discretion.  (*Wittgrove,* 120 Cal.App.4th at p. 1327; *id.* [court "is not restricted by any set of statutory guidelines"]; *In re Marriage of Czapar* (1991) 232 Cal.App.3d 1308, 1316 [noting "specific factual findings" not required for pendente lite spousal support, and concluding there was sufficient evidence for support award].)  Nonetheless, Victor maintains the trial court was required to make his requested findings here.  We disagree.

---

Cal.App.4th 504, 515 [trial court failed to divide pension benefit, based on incorrect belief its discretion was constrained by prior judgment].)

15

First, Victor argues the section 4320 factors are "just as relevant in fixing temporary support, especially where the marriage is as short as this one, so temporary support will likely serve double duty." But temporary and permanent spousal support serve different purposes, regardless of the length of the marriage. (See *Mendoza, supra*, 14 Cal.App.5th at p. 942; *Wittgrove*, 120 Cal.App.4th at p. 1327.) We also disagree with Victor that *In re Marriage of Huntington* (1992) 10 Cal.App.4th 1513 is instructive because the Court of Appeal there considered temporary spousal support in affirming an award of permanent support. (*Id.* at p. 1522 [affirming award of $5000 for 6 months, after short marriage; wife already received $7,500 for 18 months and "total support thus extended for . . . two years"].) Even if temporary support can be relevant to permanent support in some cases, it does not follow that permanent support factors are relevant in setting temporary support—much less required.

Second, Victor contends section 4332 findings serve the same purpose as a statement of decision in facilitating review, so the failure to provide them is reversible error. Statements of decision generally are not required for motions or similar requests, subject to exceptions not applicable here. (See *In re Marriage of Askmo* (2000) 85 Cal.App.4th 1032, 1040 [statement of decision not needed for pendente lite spousal support and fees awarded after order to show cause]; *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1497 [affirming fee award, and confirming statement of decision not required for motions].) Further, the matter for which Victor wants review— section 4320—is not at issue, so our review is not impacted by the lack of findings. *In re Marriage of Sellers* (2003) 110 Cal.App.4th 1007, cited by Victor here, involves one of those inapplicable exceptions and is inapposite. (*Id.* at pp. 1010-1011 [reversing postjudgment order reducing spousal

16

support, where trial court did not explain rationale and party requested statement of decision; § 3654 required statement of decision for orders "modifying, terminating, or setting" spousal support upon request and the record was otherwise inadequate to review the decision].) Finally, Victor concedes failure to provide a statement of decision requires prejudice for reversal (see *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1102), and, as we discuss *post*, he does not establish prejudice here.

Third, Victor contends that if the trial court made the requested findings, "it probably would not have made so many mistakes regarding its other findings." He appears to identify only one requested finding related to the alleged mistakes *ante*; namely, he argues that if the court considered Tiffany's needs under section 4320, subdivision (d), it "may have recognized its error regarding Mr. Pearson's opinion on the marital standard of living." We gather he means the court's use of $77,000, instead of $72,566, and do not see how section 4320 findings would have avoided this typographical error. Otherwise, Victor suggests the findings would resolve concerns about matters like Tiffany's wealth and failure to seek employment since separation, but they are not at issue. We recognize the court's order noted "[f]actors of concern," including the fact that Tiffany had not sought work. If anything, this reflects the court gave due consideration to potential concerns in the case; it remained free to exercise its broad discretion in setting temporary spousal support.

Finally, Victor again relies on inapposite or distinguishable cases. (See *In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1297-1299 [reversing permanent spousal support award, where "record provide[d] no insight into how the court weighed the statutory factors" under § 4320]; *In re Marriage of Dick* (1993) 15 Cal.App.4th 144, 159-160 [affirming temporary support order;

17

substantial evidence supported findings regarding parties' assets]; *In re Marriage of Siegel* (1972) 26 Cal.App.3d 88, 93 [affirming order modifying support that considered needs of adult child].)[5]

C.    *Prejudice*

Finally, Tiffany contends Victor failed to meet his burden to establish reversible error, because he did not address prejudice in his opening brief and could not show it regardless. We already rejected Victor's assertions of error, but we elect to address prejudice and agree he has not shown it.

" 'It is a fundamental principle of appellate jurisprudence in this state that a judgment will not be reversed unless it can be shown that a trial court error in the case affected the result.' [Citation.] ' "The burden is on the appellant, not alone to show error, but to show injury from the error." ' . . . 'Only when an error has resulted in a miscarriage of justice will it be deemed to be prejudicial so as to require reversal.' [Citation.] A miscarriage of justice is not found 'unless it appears reasonably probable that, absent the error, the appellant would have obtained a more favorable result.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822.)

We agree Victor forfeited the issue of prejudice by not raising it in his opening brief. (*Stroh, supra,* 10 Cal.App.4th at p. 1453.) Victor maintains he did make this showing in his opening brief, claiming he explained at pages 25 to 27 why the income determination was reversible error and at pages 27 to

---

[5]    Victor makes additional points on reply, including that the plain language of section 4332 requires findings in dissolution matters upon request, and that the trial court has discretion to consider section 4320 even if not required. He has forfeited these points. (*American Drug Stores, Inc. v. Stroh* (1992) 10 Cal.App.4th 1446, 1453 (*Stroh*) ["[p]oints raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument"].)

how the court's failure to make findings under section 4320 was "highly prejudicial" and "severely prejudiced" him. He did not address prejudice on the cited pages, or otherwise, and using the phrase "reversible error" is not enough. (See *In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337 [" 'Where any error is relied on for a reversal it is not sufficient for appellant to point to the error and rest there.' "].)

Even if we reach the issue, Victor's arguments are not persuasive. He contends he established prejudicial error in "in at least four ways," citing other sections of his reply brief: "(1) by proving the Trial Court made an arbitrary decision . . .; (2) by showing the Trial Court improperly reached back two years to use Victor's best year ever to inflate income for support . . .; (3) by showing the prejudice resulting from the failure to make findings as requested . . . ; and [(4)] by showing the Trial Court's use of guideline support in this extreme outlier of a case was entirely improper . . . ."

Victor's first three points amount to a conclusory assertion that because the trial court allegedly abused its discretion in determining his income and declining to make requested findings, its decision was prejudicial. Indeed, he questions how he "could have established . . . the [t]rial [c]ourt's decision was arbitrary . . . without simultaneously demonstrating reversible error . . . ." But showing a court erred is not the same as showing the error made a difference. Victor does not establish it is probable the trial court would have awarded a lower level of temporary spousal support if it considered section 4320 or used his expert's income number. (See *Wittgrove, supra*, 120 Cal.App.4th at p. 1329 [after rejecting argument that there was no evidence for income figure, noting appellant also had not "shown . . . any prejudicial

19

error in the use of the . . . figure for calculating an amount of temporary spousal support"].)[6]

The record also does not suggest Victor would have obtained a better result. The trial court's "[f]actors of concern" make clear the court was aware, for example, that the marriage was brief and Tiffany had not sought work since the separation. As for the income number, Tiffany notes the difference in net income for the $449,079 number used by the court ($231,320) and the $406,032 number recommended by Pearson ($226,239), was only $5,081 or around 2% of net pay. She contends there is no evidence the court's support order of $99,000 would have changed if net pay were 2% lower. Victor contends the income difference is greater when based on gross income (11%), and not trivial regardless, but he does not show how the support order would have changed. Further, Victor was arguing for $20,000 in support, and there is nothing to suggest the court would have awarded that.

Victor's fourth and final point concerns the propriety of guideline support, and we deem it forfeited. In his opening brief, Victor did not contend it was inappropriate for the trial court to use the guidelines. Tiffany addressed the guidelines in her respondent's brief, and Victor then argued on reply that the trial court's "use of guideline support in this extreme outlier of

_____

[6] Victor makes a related point that errors infringing on constitutional due process are reversible per se, and suggests an "arbitrary decision . . . not based on the evidence" constitutes such error. An abuse of discretion is not the same as a constitutional due process violation, and he does not establish the trial court engaged in the latter. (Compare *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 289-290, 293 [reversing judgment on constitutional due process grounds, where trial judge "literally walked out of the courtroom in midtrial," and foreclosed husband from finishing presentation or offering rebuttal evidence].)

a case" was "entirely improper" and "highly prejudicial."  We decline to address either this belatedly raised argument, or any related prejudice. (*Stroh, supra*, 10 Cal.App.4th at p. 1453.)

In sum, Victor does not establish grounds for reversing the trial court's award of temporary spousal support.

DISPOSITION

The order is affirmed.  Tiffany shall recover her costs on appeal.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


AARON, J.