Filed 12/16/25  Williams v. Ali CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| STUART M. WILLIAMS, | B333778 |
| Petitioner and Appellant, | (Los Angeles County Super. Ct. No. SD030630) |
| v. | |
| SHAZEENA ALI, | |
| Respondent. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILD SUPPORT SERVICES, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, William E. Weinberger, Judge.  Affirmed.

Stuart M. Willians, in pro. per., for Petitioner and Appellant.

No appearance for Respondent Shazeena Ali.

No appearance for Defendant and Respondent Los Angeles County Department of Child Support Services.

_____

Stuart Williams appeals from a family court order denying his request for modification of child support, including an equitable credit against his child support arrearages pursuant to *Jackson v. Jackson* (1975) 51 Cal.App.3d 363 (*Jackson*).[1] Williams contends the court erred in considering the responsive declaration filed by his ex-wife, Shazeena Ali, because the declaration was not properly served on him. He also contends the evidence compelled a finding his daughter lived exclusively with him for six months, thus relieving him of child support during that period. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Judgment of Dissolution and Final Custody and Support Orders*

Williams and Ali were married in 2003, and their daughter, Chloe, was born in December 2004. In March 2012 Williams filed a petition for marital dissolution, and on July 21, 2014 the family court entered a judgment dissolving the marriage (2014 judgment). At all relevant times, Williams lived in

_____

[1]  Equitable credits against child support arrearages for time periods when a child is living with the obligor spouse are commonly referred to as a *Jackson* credits. (See *Helgestad v. Vargas* (2014) 231 Cal.App.4th 719, 721-722 ["[F]amily law has developed a shorthand term for credits. They are called '*Jackson* credits,' after the first case to allow for them."].)

2

Brentwood (Los Angeles), and Ali lived in West Hollywood. Chloe attended high school in Sherman Oaks until her graduation, at age 18, on May 26, 2023.

The 2014 judgment included a custody order for the parents to have joint legal and physical custody of Chloe with equal timeshares. Except for holidays and vacations, each parent had custody on alternating weeks, beginning on Friday afternoons.[2] The parents shared the right to make decisions regarding Chloe's schooling, extracurricular activities, nonemergency medical and dental treatment, and mental health therapy, and each parent was required to notify the other promptly of any changes in these areas.

The judgment included a child support order providing that Williams would pay Ali $883 per month for Chloe's support until Chloe turned 18, or 19 if she was still in high school. The parents were jointly responsible for Chloe's reasonable and necessary health care expenses not covered by insurance, and a parent who incurred those expenses was entitled to reimbursement pursuant to the procedures in Family Code section 4063.[3] The judgment also included family law form FL-192 ("Notice of Rights and Responsibilities – Health Care Costs and Reimbursement Procedures"), which specified that a parent seeking reimbursement for health care costs must provide an itemized statement to the other parent "no more than 30 days after those costs were given to you."

---

[2] The final custody order referred to an attached holiday and vacation schedule, but it is not in the record on appeal.

[3] Further undesignated statutory references are to the Family Code.

3

B.   *The February 27, 2022 Incident and Subsequent Family Court Proceedings*[4]

On the morning of Sunday, February 27, 2022, during Ali's custodial week, Ali and then-17-year-old Chloe got into an argument that escalated into a physical altercation, and Ali slapped Chloe on the face. Chloe called Williams and asked him to pick her up from Ali's apartment, which he did. Chloe spent the rest of the week with Williams. Williams contends (but Ali disputes) that Chloe continued to live with him for several months.

On June 22, 2022 the family court[5] issued, following Ali's filing of an affidavit of facts constituting contempt, an order to show cause for contempt of the 2014 judgment. In her affidavit, Ali averred that Williams failed to make any child support payments after March 2022 and he enrolled Chloe in therapy and an out-of-state summer program without Ali's knowledge or consent. Ali also averred Williams "refused to turn the child over" during Ali's custodial time in the second week of April 2022. After a hearing, on November 3, 2022 the court[6] dismissed the order to show cause without prejudice after finding Ali's affidavit did not allege contempt with adequate specificity to determine if her claims were time barred.

---

[4]   Our summary of the February 27 incident and its aftermath is based on the undisputed facts set forth in the parties' requests for orders and responsive declarations. We separately address the disputed facts.

[5]   Judge Amy M. Pellman.

[6]   Judge Michael R. Powell presided over the proceedings from November 2022 through May 2023.

On July 7, 2022 Williams, representing himself, filed a request for order modifying child custody (2022 RFO). Although the RFO stated on the cover page that Williams was seeking a change in child custody, he checked the boxes on pages 2 and 3 for a change in child custody *and* child support (to reduce it to zero). In a concurrently filed motion and memorandum, Williams argued that Chloe stopped living with Ali after February 27, and he requested orders for sole physical and legal custody, termination of his child support obligation, and reimbursement for half of Chloe's health-related expenses incurred in 2021 and 2022. Williams filed an amended motion on August 29 in which he requested *Jackson* credits for the period Chloe was no longer living with Ali.

After additional submissions and a hearing, on February 24, 2023 the family court denied Williams's RFO and motion to modify the existing orders. The court stated it would need to consider then-18-year-old Chloe's custody preference, and by the time the court could hear from Chloe, she would reach (or nearly reach) her graduation and "emancipation." The court did not consider Williams's request for a child support modification because Williams marked only the box for a custody modification on the cover of his FL-300 request form. The court acknowledged that Williams could refile a request for a modification of support.

C.    *The March 2023 Request for Order*
      1.    *Williams's RFO, motion, and evidence*
On March 6, 2023 Williams filed a second request for order (2023 RFO) to modify child support. On the same day he filed a motion and supporting memorandum clarifying the relief he requested. Williams stated in his memorandum he was seeking a $5,298 *Jackson* credit for six months beginning in January 2022

5

"since Chloe was not living with [Ali] for those six months and [Ali] was contributing nothing to Chloe's expenses."[7] Williams also sought $5,674 as reimbursement for "50% of Chloe's medical dental and vision expenses in 2022." Williams further requested the family court end his child support obligation "due to the fact that Chloe is self-sufficient since she has a job," or in the alternative, recalculate his guideline child support obligation based on a change in his employment.[8]

Williams did not submit a separate declaration under penalty of perjury; he instead signed the RFO under penalty of perjury and cited the motion and memorandum as the "facts to support the orders" he requested. (Capitalization omitted.) In his motion Williams asserted that on January 4, 2022, after Ali slapped Chloe, Chloe decided she wanted to live with Williams full-time and visit Ali only on weekends.[9] Further, Chloe moved in with Williams and lived with him "for the next 4 months,"

---

[7] The requested *Jackson* credit equals the full amount of Williams's child support obligation for six months: $883 × 6 = $5,298.

[8] We do not reach whether Williams was entitled to a modification of child support, because at the hearing on the RFO Williams stated he was no longer seeking an order relating to child support for the period after Chloe turned 18 years old (in December 2022) and he does not contend otherwise on appeal.

[9] Although the motion refers to a January 4, 2022 slapping incident that caused Chloe to move in with him, all other references in the parties' papers refer to a February 27, 2022 incident. In his 2022 RFO, for example, Williams stated "Chloe was living with her mother 50% of the time up until February 27, 2022," and "[Chloe] moved out of her mother's apartment on February 27, 2022."

6

until the end of the school year, "with the exception of one week in February 2022 when she tried to reconcile with her mother to no avail." During their estrangement, Ali did not attend Chloe's performances in the high school musical in March or her dance recitals in April (whereas Williams went to several performances). At the end of the school year, Chloe then lived in Massachusetts for two months "with neither parent" while she attended a summer program at Harvard University; Williams paid all of Chloe's expenses for this program. After returning to California on August 6, "Chloe resumed living with [Ali] 50% of the time."

Williams attached more than a dozen exhibits to his motion, including screenshots of text messages Williams asserted he received from Ali. In a message dated February 27, 2022, Ali acknowledged that Williams was coming to pick up Chloe and complained that Chloe had been "getting totally out of hand," insulting both parents. Ali said that if Chloe continued to disrespect them, Ali would support Chloe "getting a job . . . and living with a roommate and taking a bus." In a text message dated April 13, Ali wrote to Williams: "[Y]ou're behind on child support again. Let me know what your plans are with Chloe. If she's going to be with you full-time and you're not going to be paying child support[,] I am giving up this apartment and she will need to get her belongings." Williams responded, "I will take her full time," adding, "[I]f you agree to giving me full custody we won't have to go to court. . . . She's almost eighteen anyway." On June 11, Ali wrote, "[Y]ou are 3 months behind with child support," to which Williams responded, "Chloe has not lived with you for those three months." Williams wrote, "I also want reimbursement for the money I spent on Chloe that you contributed nothing to." Williams demanded payment of $1,700

for removal of Chloe's wisdom teeth, $5,000 for her therapy, and $10,000 as Ali's share of "the money I spent on [Chloe's] summer program."

In another exhibit, Williams included a "list of medical, dental and vision expenses" from January 2021 to June 2022. (Capitalization omitted.) The list stated the total amounts spent on therapy ($7,425), vision ($818), and wisdom teeth removal ($3,104) (totaling $11,347). A separate exhibit included a billing summary from a family therapist stating Williams was charged $7,425 for 33 psychotherapy sessions between February and December 2021. Invoices from an optometrist indicated that Chloe incurred $642 in out-of-pocket expenses for services in November 2021 and $176 for services on June 14, 2022. Receipts from an oral surgeon and surgery center indicated total payments of $3,104 in connection with the removal of Chloe's wisdom teeth on June 3, 2022.

Williams also submitted the 2022-2023 bus schedule for Chloe's high school, which showed that different school bus routes served Brentwood and West Hollywood. Williams provided a declaration signed by the custodian of records at Chloe's school that stated the school, in response to a document subpoena, collected Chloe's school bus transportation records from January through June 2022, among other document categories (including receipts for the purchase of tickets for the school musical). The declaration stated the documents were attached, but the declaration does not contain a file stamp or indicate whether the records were lodged with the court.

Williams argued the transportation *records* would pr*ove that Chloe was traveling to and from his home in Brentwood* rather than Ali's apartment in West Hollywood, but he did not

8

submit the records with his motion or describe their contents.[10] Williams stated the school records would also prove Ali never attended the musical or dance recital.

### 2. *Ali's responsive declaration*

On May 18, 2023 Ali filed a responsive declaration opposing modification of the existing orders. In her declaration sworn under penalty of perjury, Ali admitted she slapped Chloe on Sunday, February 27, 2022 and that Chloe spent the rest of Ali's custodial week with Williams. Ali stated the custodial schedule did not change from the 50-50 timeshare; instead, during the

---

[10] There are no documents produced by the school in the record on appeal. On October 15, 2025 Williams filed a request for judicial notice of the documents (and on October 7 a separate request to augment the record with the documents), but he did not include copies with his requests. In his opening brief, Williams asserts the school delivered the documents directly to the family court and the court "covered up this evidence as [the judge] did not include it in the record, even though [the judge] admitted to having it in court. These documents are missing because [the judge] concealed them." However, the settled statement of the hearing on the 2023 RFO does not reflect that the court had documents lodged by the custodian. We therefore do not accept Williams's contention about what the documents would have shown (or that the family court concealed them). Whatever the circumstances, we deny Williams's requests to take judicial notice of (or augment the record with) documents purportedly produced by Chloe's school. These are not "[r]ecords of . . . any court of this state" subject to judicial notice under Evidence Code section 452, subdivision (d). (See also Cal. Rules of Court, rule 8.155 (a)(1)(A) [appellate court may order record augmented to include "[a]ny document filed or lodged in the case in superior court"].)

three-and-one-half months after the February incident, "Williams violated our custody [o]rders by sporadically refusing to allow me custody of Chloe for a total of approximately 21 days." According to Ali, the 21 days included five days following the February 27 incident and the week after Chloe's spring break.[11]

During the summer of 2022, Chloe spent seven weeks in Massachusetts. Ali declared that Williams enrolled Chloe in the Harvard summer program without seeking Ali's consent, arguing in her memorandum that "[t]he purpose of a Jackson Credit is (most certainly) not to permit a parent to unilaterally enroll a child in extra-curricular activities, and then cease making child support payments when the minor child is temporarily engaged in the sleep-away extra-curricular activity."

Ali also argued that although she did not know what Chloe's school bus records would show, they would not be dispositive as to custody. Ali declared that Chloe often "would take the bus to Brentwood to spend time after school with her friends or to study, and I would either drive to pick her up or one of her friends would drive her home to me. Sometimes she would take the bus to her father's home after school because she forgot one of her belongings at his apartment, and I would drive there to pick her up."

With respect to Williams's demand for reimbursement of Chloe's health-related expenses, Ali averred that Williams

---

[11] Although Ali asserted that Williams kept Chloe for 21 days during her custodial time, Ali's declaration identified only two weeks when Williams kept Chloe—the week of February 27 and the week after spring break. Although Chloe remained with Williams during spring break, he was entitled to custody during spring break in even years under the 2014 custody order.

incurred the expenses without her knowledge or consent; in particular, he did not notify Ali before scheduling Chloe's wisdom teeth extraction and mental health therapy, in violation of the 2014 judgment. Rather, the first time Ali learned Williams was demanding reimbursement for the expenses was his "curt (and vague)" text message in June 2022. Ali was never provided with invoices or receipts, and she did not know the name of Chloe's health care providers "until [she] reviewed the exhibits attached to [Williams's] moving papers."[12] Ali argued that Williams's request for reimbursement should be denied because she did not approve the expenses and Williams did not provide her with documentation within 30 days of incurring them as required by the FL-192 healthcare reimbursement procedures incorporated into the 2014 judgment. Finally, Ali declared that at the time of her declaration, Williams owed $12,362 in support arrearages following his decision to stop paying support.

Exhibits to Ali's responsive declaration included an email from Chloe to Ali dated November 9, 2022 with a "statement from Chloe regarding the custody battle between my parents" (not under penalty of perjury). Chloe wrote that the time Ali slapped her was an "isolated incident" and never happened again. She stated, "I live with [Ali] 50% of the time. Contrary to what my father stated in court, my mother is not a deadbeat and she does do things for me. She cooks for me, drives me to school, and gives me spending money when she can. I want my parents to have

---

[12]  Williams attached the receipts for Chloe's therapist, optometrist, and wisdom teeth extraction to his 2022 RFO filed on July 7, 2022, which was served on Ali on August 15, 2022. On our own motion we augment the record to include the August 25, 2022 proof of service. (Cal. Rules of Court, rule 8.155(a)(1)(A).)

11

split and equal custody." Ali also submitted a July 11, 2022 text message exchange in which Ali told Chloe she wanted to discuss "decisions regarding our living situation going forward," and Chloe responded, "I want 50% custody, I've told you that already."

Ali filed a request to strike Williams's RFO on the ground that Williams did not file a sworn declaration as required by rule 5.111 of the California Rules of Court.[13] Ali also objected that the exhibits to the RFO included inadmissible hearsay and lacked foundation.

### 3. *Williams's reply declaration and request to strike*

In a reply declaration filed on May 23, 2023, Williams averred that all of the facts set forth in his 2023 RFO and motion were "based on [his] personal knowledge" and all exhibits were "what they are described as being based on [his] personal knowledge." Williams argued Ali's responsive declaration constituted an admission she did not contribute anything to Chloe's living expenses, and Ali's ignorance about Chloe's summer program showed Chloe was not living with or communicating with Ali.

Also on May 23, Williams filed a request to strike Ali's responsive declaration and exhibits on the basis they were not

---

[13] California Rules of Court, rule 5.111 states in relevant part, "Along with a *Request for Order* (form FL-300) . . . a party must file a supporting declaration" that "must comply with the following requirements: . . . [¶] . . . [(b)(2)] A declaration must be based on personal knowledge and explain how the person has acquired that knowledge. The statements in the declaration must be admissible in evidence."

validly served.  The proof of service signed and filed by Ali's attorney stated the attorney "caused the documents to be personally delivered to the person at the person's office by leaving the documents in an envelope or package clearly labeled to identify the person being served with a receptionist or an individual in charge of the office."  Williams argued the proof of service was fraudulent, stating "the documents were not left with anyone at [Williams's] [o]ffice because it does not exist. . . .  [Williams] lives in an apartment building.  There is no doorman, no security guard, no concierge, and no onsite manager who receives packages.  The documents have not been left with any person at [Williams's] residence."  (Capitalization and boldface omitted).  Moreover, although Ali's attorney attested that he also emailed the documents to Williams, this did not constitute proper service because Williams never consented to service by email.  Williams argued the family court should strike the responsive declaration, exclude Ali's evidence from the hearing, and "hold [Ali] in default."

Williams also filed objections to Ali's declaration and exhibits, including Chloe's July 12 text message stating "I want 50% custody" and her November 9, 2022 "statement . . . regarding the custody battle between my parents" on grounds of hearsay, lack of foundation, and "tampered evidence."  (Capitalization omitted.)

### 4. *The hearing on the 2023 RFO*

The family court[14] heard the RFO on June 1, 2023. As set forth in the settled statement of the hearing,[15] the court stated its tentative ruling to deny Williams's request for *Jackson* credits and an offset for Chloe's medical expenses because "[Ali] claimed the child was living with her at the time and no demand for reimbursement of those expenses was made within 30 days."

At the hearing, Williams reasserted his request to strike Ali's responsive declaration based on lack of proper service. Ali's attorney argued he served the responsive declaration by courier to Williams's residence and emailed a courtesy copy. The attorney noted that Williams filed his reply declaration and motion to strike immediately thereafter (five days later). The family court denied the request to strike.

As to the merits of the 2023 RFO, Williams relied on his June 11, 2022 text message exchange with Ali (in which Williams wrote "Chloe has not lived with you for those three months") as evidence Chloe was not living with Ali, arguing that Ali's lack of a denial in response to his statement was an adoptive admission. He likewise argued that the April 13 exchange (in which Ali wrote "Let me know what your plans are with Chloe. If she's going to be with you full-time and you're not going to be paying child support[,] I am giving up this apartment") was an admission that Chloe was then living with Williams. Williams

---

[14]    Judge William E. Weinberger.

[15]    There was no court reporter at the June 1, 2023 hearing. On appeal, Williams elected to proceed with a settled statement. On January 29, 2024 Williams filed a proposed statement, and on March 3, 3024 the family court filed a corrected statement.

14

also argued the subpoenaed school records showed Chloe was living with him.

Ali's attorney argued that all of Williams's evidence was hearsay, and the family court (Judge Powell) had earlier ruled the same evidence was inadmissible in connection with Williams's 2022 RFO. Williams responded that his reply declaration provided sufficient foundation for the exhibits; Chloe's medical receipts were admissible as business records based on his authentication; and the school documents were admissible based on the custodian's declaration of compliance with the subpoena.

After hearing argument, the family court adopted its tentative ruling and denied the RFO. The court did not expressly rule on the parties' evidentiary objections. The court entered its order denying the RFO on October 25, 2023.

On November 13, 2023 Williams timely appealed from the October 25 order.[16]

---

[16] We do not consider Williams's challenges to the family court's February 24, 2023 order denying the 2022 RFO because his notice of appeal stated he was appealing from the October 25, 2023 order, his civil case information likewise attached only the October 25 order, and he filed the notice of appeal more than 180 days after the February 24 order. (See Cal. Rules of Court, rule 8.104(a)(1)(C) & (e) [appeal must be filed within 180 days of order]; *Dakota Payphone, LLC v. Alcaraz* (2011) 192 Cal.App.4th 493, 509 ["'A party who fails to take a timely appeal from a decision or order from which an appeal might previously have been taken cannot obtain review of it on appeal from a subsequent judgment or order.'"]; *Malatka v. Helm* (2010) 188 Cal.App.4th 1074, 1082 ["on an appeal from an appealable ruling, an appellate court will not review earlier appealable rulings"].)

15

A. *The Family Court Did Not Abuse Its Discretion in Declining To Strike Ali's Responsive Declaration*

Williams contends the family court erred in denying his request to strike Ali's responsive declaration because he presented evidence the declaration was not timely served as required under Code of Civil Procedure sections 1005, subdivisions (b) and (c), and 1010 et seq.  Even if personal service was defective, the court did not abuse its discretion in declining to strike the declaration after finding Williams had actual notice.

Code of Civil Procedure section 1005, subdivision (b), provides that "[a]ll papers opposing a motion . . . shall be filed with the court and a copy served on each party at least nine court days . . . before the hearing."  Service on an unrepresented party may be made by delivering the papers to the party or "by leaving the notice or other paper at the party's residence with some person 18 years of age or older."  (Code Civ. Proc., § 1011, subd. (b).)[17]  At the time of Ali's declaration, service by email was not effective service absent a party's express and affirmative consent.  (See Code Civ. Proc., former § 1010.6, subd. (c), eff. Jan. 1, 2023 to July 17, 2024.)

---

[17]     In family law proceedings, "[t]he term 'request for order' has the same meaning as the terms 'motion' or notice of motion' when they are used in the Code of Civil Procedure."  (Cal. Rules of Court, rule 5.92(a)(1)(A).)  In some circumstances, a request for order must be served by a process server, "but all other requests for orders and appropriate documents may be served as specified in Code of Civil Procedure section 1010 et seq., including service by mail."  (Cal. Rules of Court, rule 5.92(f)(3).)

As discussed, the proof of service Ali relied on included the attestation by her attorney that he "caused the documents to be personally delivered" to a representative at Williams's building. Williams is correct that the attorney's statement is based on hearsay (that the courier delivered the documents to a representative of Williams). Further, Williams stated that Ali's responsive declaration was not "left with any person at [his] residence" and he had not agreed to accept email service. The record does not reflect whether the family court found Williams's statement (made only in his motion) credible and what weight (if any) the court gave to Ali's proof of service.

Regardless of whether Ali personally served Williams, there was substantial evidence Williams received the responsive declaration without significant delay. Ali's lawyer attested he emailed the documents to Williams (at the email address listed on Williams's RFO) on May 18, 2023, and Williams never asserted he did not receive the documents, either by email or by other means. And Williams certainly possessed the documents no later than May 23, 2023—six court days before the hearing date—because he attached excerpts of Ali's declaration to his request to strike. He also filed his reply declaration on May 23, and he never requested a continuance of the hearing on the RFO. Beyond a conclusory assertion of prejudice based on Ali's alleged past noncompliance with service requirements with respect to the 2022 RFO, Williams did not claim any actual delay in service or identify any impact on his ability to prosecute the RFO because of the defect.

A trial court has discretion to accept or reject late-served documents. (*Jack v. Ring LLC* (2023) 91 Cal.App.5th 1186, 1210 ["'A trial court has broad discretion to accept or reject late-filed papers.'"]; *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755,

17

765 ["A trial court has broad discretion under rule 3.1300(d) of the Rules of Court to refuse to consider papers served and filed beyond the deadline"]; see Cal. Rules of Court, rule 3.1300(d) ["No paper may be rejected for filing on the ground that it was untimely submitted for filing. If the court, in its discretion, refuses to consider a late filed paper, the minutes or order must so indicate."].) Although in this case Williams complained of improper (not late) service, Ali could have simply re-served her responsive declaration on Williams, albeit late, but Williams never requested she do so (or assert he did not receive the documents). In light of Williams's actual receipt of Ali's responsive declaration, his timely filing of a reply brief and request to strike without requesting a continuance, and in the absence of prejudice, the family court did not abuse its discretion in declining to strike Ali's declaration.[18]

Williams contends strict compliance with the personal service requirements was mandatory, and the family court's orders in the absence of personal service were void. But

---

[18] Courts have held that if a party who was not properly served with a motion nonetheless "appears at the appropriate hearing and opposes the motion on the merits—but without making any request for a continuance or demonstrating *prejudice* from the defective notice, the issue is waived." (*Reedy v. Bussell* (2007) 148 Cal.App.4th 1272, 1289, citing *Carlton v. Quint* (2000) 77 Cal.App.4th 690, 697.) In this case, Williams preserved the issue for appeal by filing and then reasserting his request to strike at the hearing. (*Carlton*, at p. 698.) Even so, Williams's failure to request a continuance and to demonstrate prejudice militates against reversal. (See *Reedy*, at p. 1289 ["In order to obtain a reversal based upon such a procedural flaw, the appellant must demonstrate not only that the notice was defective, but that he or she was *prejudiced*."].)

18

Williams's arguments are based on the statutes governing personal service of a summons and complaint initiating proceedings (e.g., Code Civ. Proc., § 415.20 et seq.), the procedures for setting aside orders and judgments entered without fundamental jurisdiction because of defective service of a summons (e.g., *id.* at § 473, subd. (d) [challenges to void orders]), or violation of specific statutory requirements (e.g., *id.* at § 1788.61 [setting aside defaults in collection proceedings]). These authorities do not apply here because the court had jurisdiction over Williams and the postjudgment proceeding based on his filing of the 2023 RFO.

B.      *The Family Court Did Not Abuse Its Discretion in Denying the 2023 RFO*

1.      *Standard of review*

Subject to exceptions not applicable here, "a support order may be modified or terminated at any time as the court determines to be necessary." (§ 3651, subd. (a); accord, *In re Marriage of Hein* (2020) 52 Cal.App.5th 519, 528.) However, "[a]s a general rule, courts will not modify child or spousal support unless there has been a material change of circumstances following the previous determination." (*In re Marriage of Usher* (2016) 6 Cal.App.5th 347, 357; accord, *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1048.) The party seeking modification of a child support order bears the burden of showing changed circumstances sufficiently material to support the modification. (*Usher,* at pp. 357-358; *Cryer,* at p. 1054.) "'The ultimate determination of whether the individual facts of the case warrant modification of support is within the discretion of the trial court.'" (*Usher*, at p. 358.)

19

We generally review an order granting or denying a request for modification of child support for an abuse of discretion. (*In re Marriage of Usher, supra*, 6 Cal.App.5th at p. 357.) This includes modification requests that seek reimbursement of a child's out-of-pocket health care expenses under section 4063. (*In re Marriage of Furie* (2017) 16 Cal.App.5th 816, 825 ["We review a trial court's order for reimbursement of uninsured healthcare expenses for abuse of discretion."]; *In re Marriage of Rothrock* (2008) 159 Cal.App.4th 223, 236.)

Under an abuse of discretion standard, "we consider only 'whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] 'We do not substitute our judgment for that of the trial court, but confine ourselves to determining whether any judge could have reasonably made the challenged order.'" (*In re Marriage of Macilwaine* (2018) 26 Cal.App.5th 514, 527; accord, *In re Marriage of Wittgrove* (2004) 120 Cal.App.4th 1317, 1327.) "On review for substantial evidence, we examine the evidence in the light most favorable to the prevailing party and give that party the benefit of every reasonable inference. [Citation.] We accept all evidence favorable to the prevailing party as true and discard contrary evidence." (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151; accord, *In re Marriage of Rothrock, supra*, 159 Cal.App.4th at p. 230.)

However, where, as here, the appellant had the burden of proof below, and the trier of fact "'expressly or implicitly concluded that [the appellant] did not carry the burden . . ., it is misleading to characterize the failure-of-proof issue as whether substantial evidence supports the judgment.'" (*Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978; accord,

*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 838.) "'[W]here the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.'" (*Juen*, at pp. 978-979; accord, *Dreyer's*, at p. 838.) "'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding."'" (*Juen*, at p. 979; accord, *Glovis America, Inc. v. County of Ventura* (2018) 28 Cal.App.5th 62, 71; *Dreyer's*, at p. 838.)

> 2. *Williams did not present evidence compelling a finding he was entitled to* Jackson *credits or reimbursements*

As a general rule, the family court may not retroactively modify child support. (See § 3651, subd. (c)(1) [with limited exceptions, "a support order may not be modified or terminated as to an amount that accrued before the date of the filing of the notice of motion or order to show cause to modify or terminate"]; *In re Marriage of Tavares* (2007) 151 Cal.App.4th 620, 624-625 ["The Legislature has established a bright-line rule that accrued child support vests and may not be adjusted up or down."]; accord, *Stover v. Bruntz* (2017) 12 Cal.App.5th 19, 26 [same].) Accordingly, "'a trial court has no discretion to absolve an obligor of support arrearages, or interest thereon.'" (*Tavares*, at p. 626; accord, *Stover*, at p. 26.)

Nonetheless, "it is within the court's equitable power to deny *enforcement* of the arrears on equitable grounds under certain circumstances." (*In re Marriage of Wilson* (2016)

4 Cal.App.5th 1011, 1016.) In 1975 the Court of Appeal in *Jackson, supra*, 51 Cal.App.3d at pages 365 to 369 concluded that where a child lived "permanently" with her father for 30 months although the mother had been awarded sole custody, the family court would have been "well within its discretion in recalling and quashing the [the mother's] writ of execution [for unpaid child support payments] or permitting only partial enforcement on the basis that [the father] had directly discharged his obligation or on the basis of equitable considerations." Thus, the *Jackson* credit was born. In the half-century since *Jackson* was decided, numerous appellate courts have recognized the family court's equitable discretion to offset arrearages for periods when a child lived with and was supported solely by the obligor spouse. (See, e.g., *In re Marriage of Trainotti* (1989) 212 Cal.App.3d 1072, 1074-1076; *In re Marriage of Okum* (1987) 195 Cal.App.3d 176, 180-182; see also *In re Marriage of Wilson, supra*, 4 Cal.App.5th at pp. 1014, 1018.)

On appeal, Williams does not address the court's equitable discretion to award *Jackson* credits. His sole contention is that the family court's finding in Ali's favor was not supported by substantial evidence because "Williams submitted all of the admissible evidence in this case, and Ali submitted no admissible evidence." We conclude otherwise.

When the family court "does not specifically rule on [an evidentiary] objection raised by a party, the objection is presumed overruled" and may be challenged on appeal. (Cal. Rules. of Court, rule 5.111(c)(2).) We review the family court's rulings on the admissibility of evidence for abuse of discretion. (*In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525; see *Symons Emergency Specialties v. City of Riverside* (2024) 99 Cal.App.5th 583, 593 [""Broadly speaking, an appellate court

reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion.”’”].) “A party challenging a trial court’s evidentiary rulings must demonstrate both an abuse of discretion and a consequent miscarriage of justice.” (*Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1449; accord, *Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317 [“‘The trial court’s error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a “miscarriage of justice”—that is, that a different result would have been probable if the error had not occurred.’”].)

The family court did not specifically rule on the parties’ evidentiary objections, and thus we presume the court overruled them. With respect to Williams’s evidence, Ali has not filed a respondent’s brief reasserting her evidentiary objections; we therefore assume the trial court did not abuse its discretion in admitting Williams’s declaration and exhibits as evidence.

With respect to Ali’s evidence, we agree with Williams that the statements made by Chloe in Ali’s exhibits are inadmissible hearsay, including Chloe’s July 12, 2022 text message to Ali expressing her preference for shared custody and Chloe’s November 9, 2022 email “statement . . . regarding the custody battle between my parents,” in which Chloe stated she lived with her parents 50 percent of the time. To the extent the family court overruled Williams’s objections, the court abused its discretion.

However, the record does not reflect that the family court considered these statements in deciding the RFO. On the contrary, the court expressly based its ruling on Ali’s claim (supported by her declaration) that Chloe continued to live with her following the slapping incident except for a few weeks in which Williams refused to return Chloe to her. Absent any

23

showing the court relied on inadmissible evidence, Williams cannot show reversible error. (See *Muzquiz v. City of Emeryville* (2000) 79 Cal.App.4th 1106, 1122 ["Evidentiary rulings will be deemed harmless if the record demonstrates the judgment was supported by the rest of the evidence properly admitted."]; see also *People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 415 [any error in admitting a hearsay statement was harmless where another witness's "statements conveyed the same information"].)[19]

Even with the admission of Williams's exhibits and the exclusion of Ali's exhibits, Williams cannot show the evidence compelled a finding that Chloe lived exclusively, or even primarily, with Williams for six months in 2022. The parents' text messages in Williams's exhibits show only that Chloe left Ali's home on February 27; Chloe's relationship with her mother was fraught; and as of April 13, 2022 the parents were *contemplating* a new custody arrangement, with Ali writing, "If she's going to be with you full-time and you're not going to be paying child support[,] I am giving up this apartment and she will need to get her belongings," and Williams responding, "I will take her full time."

---

[19] Williams also objects to admission of a June 2022 demand letter submitted by Ali with her responsive declaration in which her lawyer threatened Williams with contempt sanctions. Ali offered the letter to show, with respect to Williams's request for reimbursements, that he "has a long history of refusing to consult with me regarding decisions related to Chloe's health, education and welfare." We agree the demand letter is not admissible evidence of Williams's prior conduct, but the family court did not consider the letter in denying Williams's request for reimbursement.

Other than these messages, the case rises or falls on Ali's testimony and Williams's statements in his motion. Williams stated that Chloe left Ali's home in early January 2022 and, except for one week in February, Chloe did not return until August. Further, Williams paid for Ali's seven-week program in Massachusetts. In contrast, Ali averred that Chloe spent a total of only 21 days during Ali's custodial time with Williams (between February 27 and early April), and that Chloe's extended period away from Ali in March was partly because Williams was entitled to have Chloe during spring break and partly because he kept Chloe from Ali. Further, Ali stated, Williams enrolled Chloe in the summer program without consulting Ali, in violation of the custody order. In denying Williams's request for *Jackson* credits on the ground that "[Ali] claimed the child was living with her at the time," the family court implicitly credited Ali's testimony over Williams's statements. (*Bookout v. State of California ex rel. Dept. of Transportation, supra*, 186 Cal.App.4th at p. 1489 ["unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [losing party's] evidence lacks sufficient weight and credibility to carry the burden of proof."].) Williams has not shown the evidence compelled a finding to the contrary.

Similarly, the evidence does not compel a finding that Williams was entitled to reimbursement for Chloe's uninsured health-related expenses. Ali averred (consistent with the text messages submitted by Williams) that Williams never sought reimbursement for Chloe's therapy, wisdom teeth, and optometrist before his June 2022 text message to Ali, and he never provided detailed information about the expenses before submitting the receipts with his 2022 RFO, which was filed on July 7 and personally served on Ali on August 15. The receipts

25

on their face show that Ali was served with the 2022 RFO more than 30 days after all of these expenses were incurred. The family court found on this record that "no demand for reimbursement was made within 30 days," and Williams has presented no compelling evidence to the contrary.[20]

---

[20] On October 15, 2025 Williams filed a request for judicial notice asking us to take notice of a declaration Ali filed in 2022 (prior to the 2023 RFO) and multiple documents filed after Williams filed this appeal: six minute orders, a subpoena for Chloe's appearance at a postappeal hearing, and an ex parte application. We deny his request because these documents are not relevant to our resolution of the appeal. (See *Coyne v. City and County of San Francisco* (2017) 9 Cal.App.5th 1215, 1223, fn. 3 [denying judicial notice as to documents that were not relevant to court's analysis]; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 ["We also may decline to take judicial notice of matters that are not relevant to dispositive issues on appeal."].)

Williams also requests we take judicial notice of the certified transcripts of the family court hearings on November 3, 2022 and February 24, 2023, which the court (Judge Powell) ordered in response to Williams's proposed settled statement. We construe Williams's request as a motion to augment the record (Cal. Rules of Court, rule 8.155(a)(1)(A)) and grant the motion.

## DISPOSITION

The order is affirmed.  The parties are to bear their own costs on appeal.

FEUER, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.